AMERICAN OIL COMPANY vs. ANTONIOS KATSIKAS
& another.

Middlesex.   December 18, 1972. — August 17, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

Contract, For sale of real estate, Performance and breach, Waiver,
Modification. Waiver.

In a suit in equity brought by the purchaser for specific performance of a
written agreement to sell land, a finding that the parties had orally
extended the time for performance specified in the agreement was
without any support in the evidence and plainly wrong, and in the
absence of waiver or modification a provision terminating the
agreement upon passage of the closing date without tender of
performance must be given effect and required a decree dismissing
the bill. [438-440]

BILL IN EQUITY filed in the Superior Court on January 6,
1971.

The suit was heard by Kalus, J.

James T. Curtis (Glen B. Smith with him) for the
defendants.

Timothy H. Donohue (Bruce S. Gordon with him) for the
plaintiff.

ARMSTRONG, J.   This is a suit brought by the purchaser
for specific performance of an agreement to sell land. From
a final decree ordering specific performance, the defend-
ants appeal. The evidence is reported.

The agreement, a two-page standard form of option
agreement used by the plaintiff, along with a simulta-
neously executed three-page rider is dated July 3, 1967. By
it the defendants Katsikas and Psoinos granted the plain-
tiff an option to purchase a parcel of land, adjacent to a
shopping center, for $100,000, for use as a gasoline service
station. The time during which the option could be ex-
ercised, after several written extensions, was fixed by the

rider to end on June 30, 1968. On June 21, 1968, the plaintiff notified the defendants that it exercised the option.

The rider to the agreement was incorporated therein at the defendants' insistence. In part, it stated: "Notwithstanding anything contained in said Option and in this Rider which is a part of said Option, it is agreed and understood by the Vendor and Purchaser that if said Option is exercised by the Purchaser and the closing shall not have occurred on or before October 11, 1968,[1] this Agreement shall terminate and the parties shall have no further rights against each other either at law or in equity."

The land which was the subject of this agreement, and which was specifically bounded and described therein, was a parcel with the frontage of 180 feet and a depth of 140 feet located at the southern corner of a parking lot serving a shopping center in the town of North Andover known as "North Andover Mall." It was to be conveyed "subject to a thirty (30') foot [right of way] . . . along the southerly sideline . . .." On September 9, 1968, the plaintiff showed the defendants[2] a plan of its proposed gasoline service station layout which indicated that a curbing and plantings would block convenient vehicular access to the right of way. There was evidence to the effect that the defendants objected to the plan; that the parties thereupon worked out an alternate arrangement by which the description was to

---

[1] The rider to the agreement originally fixed the closing date as December 31, 1967. However, each time the period for exercise of the option was extended, the time for closing was correspondingly amended in writing. The first amendment made the closing date March 31, 1968; the second, April 30 or June 30, 1968; the third, July 31, 1968; and the fourth and last, October 11, 1968.

[2] Here, and in the remainder of the opinion, we do not differentiate between the defendants, Psoinos and Katsikas, and one Demoulas, who was not a defendant but was found by the trial judge to be the "true owner" of the property. Demoulas, who was related to the defendants by marriage, and another apparently held record title to the property as trustees of the "Demoulas Realty Trust" when negotiations with the plaintiff began, but thereafter conveyed it to the defendants. Although most negotiations were with Demoulas, the option agreement and extensions thereof were signed by the defendants as holders of record title. The trial judge, over the defendants' exceptions, admitted evidence of the negotiations with Demoulas, and found that the defendants ratified his actions. Although the defendants press these exceptions on appeal, it is not necessary for purposes of decision to consider them.

be changed to give the plaintiff thirty feet less frontage and thirty feet more depth; that the plaintiff was to draw up a new plan depicting the service station layout revised accordingly; and that the defendants were to prepare a new description to be incorporated in the deed and in the plaintiff's applications for required permits. There was no evidence of further communication between the parties from that time until November 4, 1968, when the plaintiff showed its revised service station layout plan to the defendants. At various times thereafter, and as late as 1970, the plaintiff sought the revised description from the defendants but failed to receive it. There was evidence that after October 11, 1968, the plaintiff was justified in thinking that the defendants intended to go through with a sale in accordance with the new terms worked out at the September 9, 1968, meeting.

The trial judge found "that any delay in the closing . . . was caused by [the defendants]"; that "at no time was any demand made upon the [plaintiff] . . . to close the conveyance . . . either on or before the closing date of October 11, 1968, or at any time subsequent thereto"; and that the plaintiff and the defendants "orally agreed to extend the time for performance until after the [defendants] . . . prepared a modified description of the property to be conveyed, and that the [defendants] . . . suffered no prejudice by reason of the delay."

An option contract for the purchase of land typically provides one terminal date for exercise of the option and another terminal date for closing. Unless the parties have otherwise agreed, the time for exercise of the option is generally considered to be of the essence, but the closing date is not. *Boston & Worcester St. Ry.* v. *Rose,* 194 Mass. 142, 149 (1907). Corbin, Contracts, § 273, pp. 599-600. Tender of performance on time may be made an express condition, however, and we are of the opinion that the rider provision quoted was such an express condition. Similar language has been so construed. *Friedman* v. *Winshall,* 343 Mich. 647 (1955).

The provision making tender of performance on time

essential to the enforceability of the contract may be waived or modified by oral agreement. *Moskow* v. *Burke,* 255 Mass. 563, 567 (1926). *Younker* v. *Pacelli,* 354 Mass. 738 (1968). Here, the trial judge found that there was such an agreement. Such a finding, if based on oral testimony, will not be reversed unless plainly wrong. *Younker* v. *Pacelli, supra,* at 741. *Matsushita Elec. Corp. of America* v. *Sonus Corp.* 362 Mass. 246, 250-251 (1972). The finding cannot stand, however, if there is no evidence to support it.

We are unable to find in the evidence any support for the foregoing finding of the trial judge. There was much testimony concerning the meeting on September 9, at which the defendants objected to the station layout and at which the parties might be found to have agreed to modify the description of the land to be conveyed. However, there was no evidence indicating that anything was done or said at that meeting, or thereafter, to modify or waive the agreed upon closing date. The testimony indicating that the defendants, after October 11, 1968, continued to act as if a sale would ultimately be consummated, does not by itself tend to show that they regarded themselves as still bound by the original option agreement. Nor does the testimony as to discussions between the parties after October 11, 1968, tend to show an understanding that they had ever amended the agreed upon closing date or waived it.

In the absence of waiver or modification, the contract provision terminating the agreement upon passage of the closing date without tender of performance must be given effect. At the expiration of the closing date, without tender by either party, the contract was at an end, and both parties were discharged. Corbin, Contracts, § 663, p. 181.

The final decree is reversed, and a new final decree is to be entered dismissing the bill.

*So ordered.*