RAYMOND A. MUCCI *vs.* BROCKTON BOCCE CLUB,
INCORPORATED; DAVID J. CARVALHO & others,[1] interveners.

Plymouth. November 13, 1984. — January 2, 1985.

Present: GREANEY, C.J., BROWN, & FINE, JJ.

*Bona Fide Purchaser. Contract,* Option, For sale of real estate, Waiver. *Real Property,* Marketability.

In an action by the holder of a right of first refusal to purchase a certain parcel of land, the evidence warranted the judge's conclusion that an offer by others to purchase the parcel was bona fide, notwithstanding the offerors' conditions as to their ability to obtain financing and to secure victualler's and liquor licenses. [158-159]

A judge's conclusion that the owner of a parcel of land could convey marketable title to the parcel notwithstanding the fact that a building thereon encroached on the adjacent land of the holder of a right of first refusal to purchase the parcel was not clearly erroneous, where the evidence before him warranted findings that the encroachment was insignificant and easily remediable. [159]

The grantee of a right of first refusal to purchase a certain parcel of land, exercisable within sixty days after notification of the grantor's receipt of a bona fide offer, was not entitled to a tolling of the sixty days during the pendency of litigation in which he sought a declaration whether an offer by third parties to purchase the parcel was bona fide. [159-161]

CIVIL ACTION commenced in the Superior Court Department on April 17, 1981.

The case was heard by *Andrew R. Linscott,* J.

*Thomas Arthur Hensley* for the plaintiff.

*John C. Ottenberg* for the defendant.

FINE, J. In 1964, for valuable consideration, the defendant Brockton Bocce Club, Incorporated (Club), granted to the plaintiff, Raymond A. Mucci (Mucci), a right of first refusal to purchase its property. The property, approximately two acres

---

[1] Frank Middleton and Philip Nessralla.

of land with a building, is adjacent to the Westgate Mall, a large shopping center in Brockton. Mucci owns or controls the land surrounding the Club property, including the Westgate Mall. The deed conveying the right of first refusal states:

> "It is agreed that in the event the grantors [the Club] desire to sell their premises located off the easterly side of Westgate Drive in said Brockton, the grantee [Mucci] will have the first opportunity to purchase the premises.
>
> "In the event the grantor receives a bona fide offer for the premises the grantor shall communicate the same in writing to the grantee, and the grantee shall thereafter have sixty (60) days in which to purchase the premises for a sum equal to the bona fide offer.
>
> "In the event that the grantee does not, within sixty (60) days, sign a binding agreement with the grantor to purchase the premises, then the grantor may sell the same to any other person."

On December 15, 1980, the Club's attorney informed Mucci by letter that the Club had entered into a purchase and sale agreement for the property for $190,000. The prospective purchasers were Frank Middleton and David J. Carvalho, two of the interveners in this action. The letter also advised Mucci that, if he wished to purchase the property for $190,000, he had sixty days to exercise his right of first refusal. Enclosed with the letter was an unsigned copy of the Club's purchase and sale agreement with Middleton and Carvalho. That agreement contained several contingencies. It was subject to the buyers' obtaining a mortgage, within sixty days, in the amount of $160,000 and at the prevailing rate of interest. It was also contingent upon the approval, within seventy-five days, of both a liquor license and a common victualler's license. Should the conditions not be met, the agreement called for the return of the $5,000 deposit, with no further obligation on the part of any party. In the event of a failure by the buyers otherwise to perform, the agreement allowed the Club to retain the $5,000 as liquidated damages. The closing date called for was February

18, 1981. That date had been extended by agreement up through at least the date of trial.

On February 13, 1981, before the expiration of the sixty-day period for the exercise of the right of first refusal, Mucci executed a purchase and sale agreement with the Club. The agreement provided for a purchase price of $190,000, payment of a $5,000 deposit, and a closing date of April 21, 1981. It specified that time was of the essence. It also stated, "This agreement is tendered by the Buyer in accordance with his option dated May 11, 1964, to sign a binding agreement to purchase the subject premises within sixty (60) days of notice from the Seller that it has received a bona fide offer for said premises. Buyer's exercise of his option to purchase is contingent upon the existence of a bona fide offer at the purchase price herein contained on February 13, 1981." Mucci did not tender the purchase price on April 21, 1981.

On April 17, 1981, Mucci filed this action against the Club. In the first count of the complaint, he asked the court to make a determination whether, as of February 13, 1981, the Middleton and Carvalho purchase and sale agreement constituted a bona fide offer within the meaning of the 1964 deed, to issue a preliminary injunction restraining the Club from transferring the property[2] and to award him damages in the amount of the deposit, $5,000. The second count concerned an alleged encroachment of the Club building onto land owned by Mucci.[3] He alleged that this encroachment would materially affect the marketability of the Club's property and that, as a result, the purchase and sale agreement between the Club and Carvalho and Middleton, which guaranteed the conveyance of marketable title, was void. Mucci contended, therefore, that the Club had fraudulently procured his exercise of the right of first refusal at an inflated price, and he asked the court to declare his purchase and sale agreement with the Club to be void.

---

[2] After hearing, on April 23, 1981, the request for a preliminary injunction was denied.

[3] The trial judge found that the encroachment existed and ordered the Club to remove it. The Club does not raise the issue in this appeal.

After a jury-waived trial, a Superior Court judge declared, inter alia, that the Carvalho and Middleton agreement constituted a bona fide offer. He ruled further that Mucci had lost his right of first refusal as to that offer and, in any event, that it would be inequitable to allow the exercise of that right after extended unsuccessful litigation. On appeal, Mucci challenges both of these rulings.

1. The term "bona fide" is not defined in the deed. That term has been defined to mean actions done "honestly without purpose to defraud." *Fairfield Holding Corp.* v. *Souther*, 258 Mass. 540, 543 (1927).[4] The question whether an act is bona fide is one of fact, and the party alleging its absence ordinarily has the burden of proof. *Id.* at 543-544. *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974).

Mucci's contention that the offer was not bona fide is based in part upon the conditions in the agreement, that the buyers obtain financing and licenses. Mucci asserts that it would be unfair for him to be forced to match the $190,000 price since Carvalho and Middleton could avoid the purchase by simply not meeting the conditions. The 1964 deed, drafted by Mucci's attorney, however, does not specify that an offer, to trigger the right of first refusal, must be unconditional. Conditions of this type are certainly not uncommon in agreements for the sale of commercial real estate. Their presence, apart from anything else, does not prevent a finding that the agreements were entered into honestly and with serious intent.

There was evidence before the trial judge that Middleton and Carvalho had obtained the necessary financing as well as the victualler's license and that they had done all that they could do to obtain a liquor license. The senior vice president of

---

[4] Accord *Merrill* v. *Department of Motor Vehicles*, 71 Cal.2d 907, 921 (1969) (bona fide means "honesty, fair dealing, and freedom from deceit"); *Bridgeport Mortgage & Realty Corp.* v. *Whitlock*, 128 Conn. 57, 60 (1941) (a bona fide mortgage is one where there is "good faith without fraud or deception; that is, good faith and honesty as distinguished from bad faith"). Cf. G. L. c. 106, § 1-201(19), inserted by St. 1957, c. 765, § 1 (UCC definition of "good faith" is "honesty in fact in the conduct or transaction concerned").

the Plymouth Home National Bank testified that the bank had made an oral commitment to provide financing for over $160,000. Carvalho and Middleton were experienced in the real estate business and had been customers of the bank for years; many other such oral financing commitments had been made to them. Compare *Hurd* v. *Cormier*, 358 Mass. 736, 739 (1971); *Shell Oil Co.* v. *Kapler*, 235 Minn. 292, 299 (1951). As for the only remaining contingency, liquor license approval, Middleton testified that, after signing the agreement with the Club, he and Carvalho learned that they could not submit a formal application until they took title to the property. They did file papers to establish that they had no criminal records, a condition for issuance of a license. Thus, there was evidence to support the finding that the offer, even if conditional, was bona fide notwithstanding the conditions in the purchase and sale agreement.

Alternatively, Mucci maintains that the offer was not bona fide because the Club's building was encroaching on his land and the Club, therefore, could not deliver marketable title. But the judge found, on the basis of evidence, that, notwithstanding the encroachment, Middleton and Carvalho considered the title marketable and planned to purchase the property. Only a small part of an old building, with little value, and easily removable, encroached on Mucci's property. Marketable title does not mean perfect title but, rather, title free from reasonable doubt; in other words, from doubt that would cause a prudent person to hesitate before investing his money. *Mishara* v. *Albion*, 341 Mass. 652, 654-655 (1961). The judge's finding that the encroachment did not make the title unmarketable was not clearly erroneous.

2. Mucci contends that the judge was incorrect in ruling that he could no longer exercise his right of first refusal. Unless he can show that, for some reason, he is entitled to special consideration, his right to acquire the property has expired. When Mucci was notified of the Carvalho and Middleton agreement to purchase the Club property for $190,000, the right of first refusal ripened into an option to purchase at the stated price. 1A Corbin, Contracts, § 261, at 472-473 (1963). By

entering into a purchase and sale agreement with the Club within the sixty-day period provided for in the 1964 deed, Mucci began the process of exercising the option. The agreement he signed provided that time was of the essence, and it specified an April 21, 1981, closing date. By failing either to tender the purchase price on that date or to extend the period by agreement with the Club, Mucci lost what right he had to purchase the property, and the Club became free to sell to Carvalho and Middleton. See *American Oil Co.* v. *Katsikas*, 1 Mass. App. Ct. 437 (1973).

In arguing that he is entitled to special consideration, Mucci relies on the fact that he brought this declaratory judgment action prior to April 21, 1981. He argues that declaratory relief offered him the only protection available when he found himself faced with a questionable offer and an approaching deadline. There is some surface appeal to this argument, given the quandary in which Mucci found himself and the purpose of the Declaratory Judgment Act: "to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, § 9, inserted by St. 1945, c. 582, § 1. We have found no authority to support his contention, however, and we agree with the trial judge that principles of equity do not in these circumstances call for the unusual relief sought.

The right of first refusal existed for the sole benefit of Mucci. He bargained for and received an option of sixty days' duration, not more. Extending the period would give him considerably more. It would afford him an additional period of time during which he would be able to evaluate the risk and observe fluctuations in the market value of the property before choosing whether to take advantage of the option. He took few steps to make a timely investigation of the seriousness of the offer.[5] He chose the course of litigation voluntarily, asserting incor-

---

[5] Mucci did not have the property appraised or check comparable land sales in the area before bringing this action. He did not consult the Club, the Club's attorney, or Carvalho or Middleton to question them about the offer. The only inquiry was an indirect one conducted by a mutual friend of Carvalho and Mucci.

rectly that the offer was not bona fide, and he lost. As a result of the litigation, the Club, which did nothing to cause the delay, has been forced to wait several years before being able to conclude the sale of its property.

What authority there is for the proposition that litigation in some situations results in the tolling of otherwise applicable time limits does not support Mucci's position. In the case of *Belfer* v. *Building Commr. of Boston*, 363 Mass. 439 (1973), a deadline for use of a zoning variance was extended where, because of a judicial challenge to the variance, an owner was unable, as a practical matter, to use the variance while the litigation was pending. That situation is distinguishable from one in which the party seeking to be excused from the time limit is under no real or practical impediment to the exercise of the right, *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197 (1974), and where he is the one who brought suit. Mucci would not have been completely without a remedy had he exercised his purchase rights in a timely fashion and then subsequently prevailed in the litigation on the issue of bona fides. He could have pursued a claim for damages or rescission.

"A party who stumbles in exercising an option is generally not entitled to equitable relief." *Loitherstein* v. *International Business Machines Co.*, 11 Mass. App. Ct. 91, 96 (1980). As in that case, in the interest of achieving commercial certainty, Mucci's rights should be strictly construed. Of course, if, for some reason, the Middleton and Carvalho purchase does not materialize, Mucci will retain his right of first refusal as to future offers.

*Judgment affirmed.*