932 F.2d 333
 CONTINENTAL CABLEVISION OF NEW ENGLAND, INC., Plaintiff-Appellant,
v.
UNITED BROADCASTING COMPANY; Suburban Bank, d/b/a Sovran
Bank/Maryland, as it is Co-Trustee of the
Residuary Trust established under the
Will of Richard Eaton,
Defendants-Appellees,
and
Grover B. Russell, Jr., as he is Co-Trustee of the Residuary
Trust established under the Will of Richard Eaton,
Defendant.
CONTINENTAL CABLEVISION OF NEW ENGLAND, INC., Plaintiff-Appellee,
v.
UNITED BROADCASTING COMPANY; Suburban Bank, d/b/a Sovran
Bank/Maryland, as it is Co-Trustee of the
Residuary Trust established under the
Will of Richard Eaton,
Defendants-Appellants,
and
Grover B. Russell, Jr., as he is Co-Trustee of the Residuary
Trust established under the Will of Richard Eaton,
Defendant.
 Nos. 90-2043, 90-2044.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1990.
Decided May 3, 1991.
 
 Laura Steinberg, Sullivan & Worcester, Boston, Mass., argued (Katherine J. Ross, Jean Pagliuca Smith, Sullivan & Worcester, Boston, Mass., John C. Keeney, Jr., Hogan & Hartson, Washington, D.C., on brief), for defendant-appellant.
 Marianne K. Renjilian, argued (W. Shepherdson Abell, Jeff Evan Lowinger, Furey, Doolan & Abell, Chevy Chase, Md., on brief), for appellee Sovran Bank/MarylandThomas Schattenfield, James Harold Hulme, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for appellee United Broadcasting.
 Before HALL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 Continental Cablevision of New England, Inc., appeals an order of the district court dismissing its action as moot. United Broadcasting Company, Inc., and Sovran Bank/Maryland have filed a protective cross-appeal of the court's prior grant of interim declaratory relief. We affirm in part, reverse in part, and remand with instructions.
 
 I.
 
 2
 Continental Cablevision of New England, Inc.[1] (Continental), and United Cable Company of New Hampshire, Inc. (United Cable), are operators of community antenna television (CATV) systems in New England. United Cable's grandparent company, United Broadcasting Company, Inc. (United Broadcasting), is engaged in the radio broadcast and cable television business in six states and the District of Columbia. In early 1965, United Cable acquired a franchise from the City of Manchester, New Hampshire, to provide CATV services. By 1973, United Cable had not provided CATV services to a significant portion of Manchester; therefore, the city issued a franchise to Continental to build and operate CATV systems in the unserviced areas. The issuance of this franchise provoked litigation between United Cable and Continental before the Federal Communications Commission.
 
 
 3
 In 1975, Continental, Richard Eaton,[2] and United Cable[3] signed a Settlement Agreement.[4] Under the Settlement Agreement, Continental agreed to relinquish its Manchester franchise. As consideration, United Cable and Richard Eaton granted Continental a right of first refusal to acquire certain assets and the controlling stock of United Cable before they could be sold, either directly or indirectly, to any third parties.[5]
 
 
 4
 Upon Eaton's death in 1981, some of his United Broadcasting stock was distributed to various legatees under his will. The balance of the stock, constituting a majority interest, passed to Suburban Bank, d/b/a Sovran Bank/Maryland, as Trustee of a residuary trust established under Eaton's will.
 
 
 5
 In 1986, Continental learned that the Trustee was seeking to sell its United Broadcasting stock. Ensuing discussions made clear that the Trustee and United Broadcasting did not consider Continental's right of first refusal to be triggered by a sale of the control stock of United Cable's grandparent corporation. In May 1987, Continental filed an action seeking declaratory and injunctive relief. In particular, Continental sought a declaration that the transfer of a controlling interest in United Broadcasting would indirectly effect a transfer of United Cable's control stock and would thus trigger Continental's right of first refusal. Without deciding the issue, the district court granted summary judgment to United Broadcasting and the Trustee, holding that the right of first refusal violated the Maryland rule against perpetuities.
 
 
 6
 Continental appealed the district court's order. This court held that Massachusetts substantive law applied to the Settlement Agreement and that the right of first refusal, judicially limited to twenty-one years, did not violate the rule against perpetuities. 873 F.2d 717. We held also that Continental's right had "matured" when the Trustee agreed to sell[6] United Cable's grandparent company, United Broadcasting, and remanded for further proceedings.[7]
 
 
 7
 Following remand, Continental sought to exercise its right of first refusal by moving for interim declaratory and injunctive relief to enforce this court's mandate. The Trustee and United Broadcasting argued that, as a result of the Tax Reform Act of 1986, they would incur a substantial corporate income tax if they were required to sell United Cable's stock. On the other hand, a sale of United Broadcasting stock would result only in a capital gains tax on the appreciation from the date of Eaton's death to the date of the sale.[8]
 
 
 8
 The district court issued an order on November 30, 1989, requiring the Trustee to tender United Cable stock, rather than fixed assets, to Continental. Moreover, in an attempt to avoid the incurrence of the tax, while keeping Continental's purchase on the "same terms," the court ordered Continental's right of first refusal to be made conditional upon closing the transaction with UBC Acquisition. To implement this, the court ordered the sellers to include a provision in the Stock Purchase Agreement that would require UBC Acquisition to offer Continental 52.66% of the outstanding stock in United Cable immediately after transfer of the stock from the Trustee.
 
 
 9
 On December 12, 1989, Continental moved the court for reconsideration and clarification of the November 30 order. Two weeks later, the appellees notified the district court that the Trustee had terminated the Stock Purchase Agreement, effective December 21, 1989, for reasons unrelated to Continental's preemptive rights, and requested the court to dismiss Continental's action as moot. Subsequently, the district court ruled the action moot and dismissed the case.II.
 
 
 10
 Continental appeals the court's dismissal of its action, arguing that its right of first refusal had vested and could not be revoked. The Trustee and United Broadcasting cross-appeal, arguing that the district court erred by ordering the Trustee to tender 52.66% of United Cable's stock to Continental. In addition, they argue that the district court erred by ordering them to tender United Cable's control stock at the same price and terms offered in the Stock Purchase Agreement, rather than at market price. If we affirm the district court's dismissal, we need not reach the crossappeal. Therefore, we will first address Continental's appeal.
 
 A.
 
 11
 Continental argues that its right of first refusal vested and became enforceable when the Trustee agreed to transfer United Cable's control stock to UBC Acquisition; therefore, its right could not be defeated by subsequent cancellation of the Stock Purchase Agreement. Though the district court did not hold that termination of the Stock Purchase Agreement permanently extinguished Continental's right of first refusal, the court held that the right of first refusal was not presently enforceable because the triggering event, i.e., the Stock Purchase Agreement, was no longer in existence.[9]
 
 
 12
 Whereas we held in our earlier opinion that the sale of a controlling interest in United Broadcasting stock triggered Continental's right of first refusal, we did not consider whether Continental's right could be revoked, once it had been triggered.[10]
 
 
 13
 Though a tender to Continental was to be on the same terms as those tendered to a third party, contingencies in the third party tender cannot impede a preemptive right holder from purchasing the subject property. Mucci v. Brockton Bocce Club, 19 Mass.App. 155, 472 N.E.2d 966 (1985). Furthermore, a grantor of a right of first refusal cannot later condition its exercise on a prerequisite not contained in the contract conferring the preemptive right. Pantry Pride Enters. v. Stop & Shop Cos., 806 F.2d 1227 (4th Cir.1986) (applying Virginia law).
 
 
 14
 When the district court attempted to reconcile what it considered to be conflicting terms in the Settlement Agreement, it erred by establishing conditions precedent to the exercise of Continental's right of first refusal that were not part of the Settlement Agreement. In effect, by conditioning Continental's exercise of its right of first refusal on the transaction with UBC Acquisition, the district court converted a vested, presently enforceable contract right into a defeasible right, revocable upon the failure of a condition not agreed upon by the parties to the 1975 Settlement Agreement. Stated in more basic terms, the court converted a contractual right to purchase first into a conditional right to purchase second.
 
 
 15
 We hold, therefore, that Continental's right of first refusal became presently enforceable and indefeasible upon the Trustee's execution of the Stock Purchase Agreement with UBC Acquisition.[11] The action is not moot, therefore, and we reverse the order of dismissal.
 
 B.
 
 16
 Because we reverse the district court's dismissal, we must also consider the cross-appeal. The Trustee and United Broadcasting argue that the district court erred in ordering a tender of 52.66% of United Cable's stock to Continental. The present day United Cable consists of subsidiaries doing cable business in Vermont and other areas; in 1975, when the Settlement Agreement was signed, United Cable was comprised only of the Manchester cable system. Therefore, cross-appellants argue that Continental's right of first refusal should be limited, and a proper tender should be of the control stock of a newly-formed subsidiary, consisting only of Manchester cable system assets.
 
 
 17
 The district court held that a tender of stock of a newly-formed company representing only the Manchester cable system assets violated the spirit of the 1975 Settlement Agreement and ordered the tender of the "present day" United Cable control stock. The court noted that the contract called for tender of Manchester cable assets only if a system asset purchase were contemplated by United Broadcasting. However, the contract did not impose a similar geographic restriction on Continental's right of first refusal for a sale of United Cable's control stock; therefore, the court held that the parties did not intend to "freeze" United Cable in its 1975 "incarnation." We concur with the district court's reasoning.
 
 
 18
 The parties made a bargain in 1975 that could have limited the right of first refusal to certain stock or assets. The parties could reasonably have foreseen that United Cable would expand and grow; alternatively, United Broadcasting could have prevented United Cable from expanding beyond its Manchester area assets. To deny Continental the right of first refusal set forth in the agreement would deprive it of the benefit of its bargain.
 
 C.
 
 19
 The Trustee and United Broadcasting argue further that, under the terms of the 1975 Settlement Agreement, the tender of United Cable's control stock should be at market price, taking into account the tax consequences and producing the same net benefit as the sale to UBC Acquisition would have yielded. Cross-appellants argue that a sale to Continental based on a simple pro rata allocation of the United Cable component of the Stock Purchase Agreement would result in a corporate level income tax that would decimate the payment to be received by the sellers.
 
 
 20
 The district court agreed that, under the current tax laws, the proposed sale to UBC Acquisition would be essentially tax-free; on the other hand, a sale of United Cable stock directly to Continental would force United Broadcasting to incur several million dollars in income tax. On that basis, the court perceived an apparent conflict between two provisions of the Settlement Agreement. One provision allowed Continental to exercise its right of first refusal by paying "the same ... price or consideration and terms" as offered by a third party buyer; another provision required Continental to offer the seller the "same ... terms." Thus, even if Continental offers the same price, terms, and conditions that UBC Acquisition offered, the net benefit to be received by the Trustee after payment of the tax would be less than the net benefit to be received from UBC Acquisition, which would not be reduced by an income tax.
 
 
 21
 In an effort to interpret the Settlement Agreement as a whole, the court held that it could not have been the intent of the parties for United Broadcasting to incur a substantial tax burden upon Continental's exercise of its right of first refusal. We find it unnecessary to decide the intent of the parties, however, because counsel for Continental stated at oral argument that her client is willing to compensate the Trustee for any income tax incurred as a result of its purchase of 52.66% the United Cable control stock. By requiring Continental to offset the tax incurred by its purchase of United Cable stock, the proportionate net benefit could be realized by the Trustee. After remand, the district court should include this requirement in its order.
 
 
 22
 The question of exactly what "terms and conditions" must be tendered by Continental to the Trustee is separate from the tax issue. Under the Settlement Agreement, the sellers are required to tender to Continental the same consideration, price, and terms as were offered to a third party. However, the cross-appellants argue that the terms and conditions of the Stock Purchase Agreement cannot be duplicated in a sale of the United Cable control stock to Continental. Though certain trust beneficiaries were willing to accept notes in payment from UBC Acquisition in a sale of United Broadcasting, they might not be willing to accept notes from Continental in payment for the United Cable stock. The district court ruled simply that Continental must be tendered the United Cable stock at the same price and upon the same terms as the transaction between the Trustee and the third party. In other words, if the payment provisions of the Stock Purchase Agreement are not altered and the third party pays for 35% of the stock in cash and the remaining 65% in promissory notes, then Continental must pay 35% in cash and 65% in promissory notes.
 
 
 23
 Cross-appellants point out that the Stock Purchase Agreement contained a consent provision designed to allocate the risk of notes to those beneficiaries who were willing to take them, and that this same provision should be part of the "terms and conditions" of a transaction with Continental. However, to the extent the consent provision would enable the beneficiaries and the Trustee to defeat Continental's right of first refusal, it would be beyond the power reserved to the sellers under the 1975 Settlement Agreement. Therefore, the consent provision cannot be used to deny Continental's exercise of its contractual right of first refusal. Mucci, 19 Mass.App. 155, 472 N.E.2d 966.
 
 
 24
 Nevertheless, the appellees' concern for the Trust beneficiaries is well taken, for the beneficiaries cannot be required to accept promissory notes from Continental that are of lesser value than those that were offered by the third party in the larger transaction. The 1975 Settlement Agreement clearly states that the sellers "shall tender said property for sale to Continental for the same ... price or consideration and terms as" offered to the third party. The Settlement Agreement states further that if the tendering party, i.e., United Cable or Eaton, notifies Continental within seven days after receiving Continental's offer that it "does not believe that Continental's stated offer is in an amount fairly equivalent to the fair value of the price or consideration payable by said third person ..., then in such event, ... the question shall be referred by action of either party for determination by an impartial arbitrator...."
 
 
 25
 We see the solution to the appellees' concerns in the language of the Settlement Agreement itself. Disagreement over the equivalent value of the tender should be referred to an arbitrator.
 
 
 26
 Therefore, Continental's action is not moot and we reverse the district court's dismissal thereof. We affirm the court's order that United Broadcasting must tender to Continental control stock of present-day United Cable, i.e., United Cable as it existed at the time the Stock Purchase Agreement was signed. Finally, we remand to the district court for entry of an order consistent with this opinion.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Formerly known as Continental Cablevision of New Hampshire, Inc
 
 
 [2]
 Eaton was the sole owner of United Broadcasting, which owned Friendly Broadcasting Company, Inc. Friendly Broadcasting Company owned United Cable
 
 
 [3]
 Eaton was the authorized signatory for United Cable
 
 
 [4]
 Additional background information on the events leading up to the formation of the Settlement Agreement are laid out in our earlier opinion, Continental Cablevision of New England v. United Broadcasting Co., 873 F.2d 717 (4th Cir.1989)
 
 
 [5]
 The agreement stated:
 (C) United [Cable (hereinafter United) ] hereby grants to Continental a right of first refusal to acquire all or any part of the assets, real or personal, tangible or intangible, including but not limited to all CATV system facilities, ... and associated equipment of United constituting all or any portion of United's CATV system or systems serving any or all portions of the City of Manchester, New Hampshire (the "System Assets"), and Eaton for himself and as authorized agent for United Broadcasting and Friendly hereby grants to Continental a right of frist [sic] refusal to acquire the shares of stock of United constituting its controlling capital stock interest (the "Control Stock") in each instance before the System Assets or any shares of the Control Stock may, directly or indirectly, be sold or transferred to any third person or persons. Said right of first refusal shall be upon the following terms:
 (1) Before United (including anyone acting on behalf of United) shall effect or commit to effect any sale or transfer of System Assets ... or commit to effect any sale or transfer of the Control Stock to any third person or persons, United or Eaton as the case may be, shall give written notice to Continental describing and naming the person or persons to whom the transfer is proposed, the price or consideration to be received for such transfer and all of the other terms of the proposed transaction as are relevant and shall tender said property for sale to Continental for the same (except as hereinafter qualified) price or consideration and terms as described in the notice....
 (2) ... If the price or consideration described in the First Refusal Notice and Tender as being receivable from the proposed third person transferee was to be in whole or in part in form other than cash, the price to be payable by Continental upon its exercise of said first refusal tender shall be solely in cash and in an amount which is fairly equivalent to the fair market value of the price or consideration payable by said third person or persons....
 ....
 (4) If United and Continental cannot agree as to any question of valuation or other question arising under subparagraphs (2) or (3) above or as to the meaning of any other provisions of this Agreement, the question shall be determined by an impartial arbitrator to whom the question may be referred by any party hereto.
 
 
 [6]
 On December 28, 1988, prior to oral argument, the Trustee signed a "Stock Purchase Agreement," committing it to sell the control stock of United Broadcasting to a third party, UBC Acquisition Corporation (UBC Acquisition). UBC Acquisition is not a party to this action
 
 
 [7]
 Continental Cablevision of New England, 873 F.2d 717
 
 
 [8]
 The Tax Reform Act of 1986 eliminated the ability of a corporation to engage in tax-free liquidation by stepping up the tax basis of assets and selling them without tax implications
 
 
 [9]
 The court noted also that if a new sale were proposed, Continental should again be offered its contractual right of first refusal. Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2085 (1986)
 
 
 [10]
 Continental Cablevision of New England, 873 F.2d at 719
 
 
 [11]
 Because the Stock Purchase Agreement was signed before a tender was made to Continental, it is unnecessary to decide whether Continental's right may have vested earlier