Wilkins, Douglas H., J.
This case arises out of the exercise of a right of first refusal. Having lost in the Land Court on declaratory and injunctive claims, the plaintiff, Perry A. Beckett, seeks to recover damages in this Court on theories of misrepresentation and violation of the implied contractual obligation of good faith and fair dealing. The Defendants, Jewish Cemetery Association of Massachusetts, Inc. (“JCAM”) and its former president, Harold Gold, deny that they have violated the plaintiffs rights. JCAM asserts counterclaims for recovery of damages allegedly incurred because of an unlawful condition that Mr. Beckett sought to impose upon exercise of the right of first refusal.
Before the Court are motions for summary judgment by each party upon its claims for relief, as well as the defendants’ motion to supplement the summary judgment record and the plaintiffs motion to strike the defendants’ appraisals. Defendant Gold also has moved for summary judgment on the claims against him. Beckett’s and JCAM’s motions are both allowed in part and denied in part. Gold’s motion is denied.
BACKGROUND
For purposes of summary judgment I take as true the following facts, gleaned from the parties’ submissions under Superior Court Rule 9A(b)(5).
Plaintiff Perry A. Beckett (“Beckett”) granted a duly recorded right of first refusal (ROFR) to the Beit Olam Cemetery Association, Inc. (“Beit Olam”), which is JCAM’s predecessor. In February 1998, Beit Olam purchased land from Beckett in Wayland, Massachusetts (“Lot IB”) to establish a Jewish cemetery. At the same time, Beckett granted the ROFR, which affected his remaining adjacent land (“Lot 1A”), so that Beit Olam might expand the cemetery in the future. JCAM has been the holder of the ROFR since 1999 by reason of its merger with Beit Olam.
In July 2005, Beckett learned of an opportunity to purchase a home at 68 Moore Road, along the Sudbury River in Wayland. To purchase that home, he had to obtain enough money from the sale of Lot 1A to allow him to bid on the 68 Moore Road property, which had an asking price of $1.425 million. Over the years, JCAM had offered up to $1 million for Lot 1A. Beckett found that their neighbors, the Traquina family, were willing to pay more. Upon learning of the ROFR, Mr. Traquina proposed that the purchase and sale agreement for Lot 1A include a use restriction which made *101 the Traquina offer less attractive to the cemetery. With such a restriction, the Traquinas were willing to pay $1.3 million for the properly. Without it, they were not interested in purchasing Lot 1A. Beckett and the Traquinas entered into a purchase and sale agreement dated August 5, 2005 (“Traquina P&S”), including a provision (“section 4(f)”) authorizing (but not mandating) restrictions and easements that would, among other things, have prevented use of Lot 1A as a cemetery for fifteen years and would have made portions of the land unavailable for cemetery use thereafter. Section 4(f) reads in relevant part:
Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER... and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except:
[[Image here]]
(f) A restrictive covenant which shall be recorded prior to the conveyance contemplated hereby that: (a) limits the use of the premises to be conveyed to residential uses for a period of fifteen years; (b) limits the use of the driveway and of other appurtenant rights of way for access to and from Old Sudbury Road for residential access only . . .
The section 4(f) restrictions would not benefit Beckett, who owns no other property in the area. The Traquina P&S set the closing for noon on Yom Kippur (October 13, 2005), which for purposes of summary judgment must be assumed to be a coincidence. On August 11, 2005, Beckett obligated himself to purchase 68 Moore Road, subject to conditions and contingencies in a purchase and sales agreement.
On August 16, 2005, JCAM received a letter from Beckett’s counsel notifying it that Beckett had accepted an offer to purchase Lot 1A from Traquina and giving JCAM until August 22, 2005 to decide whether to exercise its ROFR. Gold timely advised Beckett’s counsel that JCAM was exercising its ROFR. JCAM paid the required $100,000 deposit. Beckett returned Traquina’s $100,000 deposit to him. Gold forwarded a proposed deed that omitted reference to the language of section 4(f) of the Traquina P&S because JCAM believed that the language was neither a bona fide term of the purchase nor valid and enforceable. The parties vigorously dispute what Gold and Beckett said to each other in August 2005. The content of those discussions therefore cannot be taken as established at the summary judgment stage.
On October 11, 2005, one day prior to the scheduled closing, Beckett’s counsel forwarded a draft “Declaration of Easements and Restrictions” similar to those contemplated by section 4(f) of the Traquina P&S. Gold called Beckett that same day to object to the easements and restrictions referenced in the Traquina P&S, particularly section 4(f). On the morning of October 12, 2005 (and again on October 17, 2005), Gold confirmed to Beckett’s counsel that JCAM was prepared to complete the closing at noon, as scheduled, but insisted that Beckett not record the Declaration of Easements and Restrictions. Beckett’s counsel advised Gold that Beckett had instructed him not to tender a deed to JCAM without first recording the declaration for Traquina’s benefit.
Later in the day on October 12, 2005, JCAM filed suit in the Land Court to compel Beckett to convey Lot 1A to it pursuant to the ROFR, without filing the Declaration. Jewish Cemetery Ass’n. of Mass., Inc. v. Perry A. Beckett, Land Court Misc. Case no. 314411. JCAM sought an order that Beckett not record a proposed “Declaration of Easements and Restrictions” in advance of the conveyance to JCAM, because the declaration would have prevented use of Lot 1A as a cemetery for fifteen years. The Land Court ruled for JCAM, but ordered that Beckett’s counterclaims “setting forth claims for deceit/misrepresentation and breach of duly of good faith and fair dealing, respectively, are hereby dismissed without prejudice to Beckett’s right to bring such claims in a court having subject matter jurisdiction.” Beckett then commenced this action, alleging deceit/misrepresentation (Count I) and breach of the contractual obligation of good faith and fair dealing (Count II). Beckett asserts these claims against both JCAM and Gold. JCAM counterclaimed for Beckett’s alleged breach of his obligation to JCAM of good faith and fair dealing. This court has denied the defendants’ motion to dismiss the complaint. Beckett v. Jewish Cemetery Ass’n of Massachusetts, Inc., 23 Mass. L. Rptr. 520, 523 (Mass.Super Ct. 2008), aff'd 73 Mass.App.Ct. 1123 (2009).
In accordance with the Land Court judgment, a newly-formed JCAM affiliate purchased Lot 1A from Beckett for the agreed $1.3 million, by deed dated July 26, 2007.
Gold has never been paid for his service on the JCAM Board of Directors or as a JCAM officer. JCAM is a Massachusetts not-for-profit corporation, organized to function as a cemetery association and is duly qualified as such under section 510(c) (13) of the Internal Revenue Code.
DISCUSSION
On summary judgment, the moving party has the burden to demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Foley v. Boston Hous. Auth., 407 Mass. 640, 643 (1990). The movant may meet this burden by showing that the plaintiff has no reasonable expectation of producing evidence on a necessary element of her case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party meets the burden, the opposing party must advance specific facts which establish a genuine dispute of material fact. Id.
*102 I.
JCAM moves jointly with Gold to dismiss Beckett’s entire complaint on two grounds. First, they argue that Beckett has no claim for breach of the contractual obligation of good faith and fair dealing, because he already received all the contractual benefits to which he was entitled, as evidenced by the Land Court ruling. Second, they argue that none of Beckett’s alleged damages were caused by reliance on anything JCAM or Gold said or did.
Every contract has an implied covenant of good faith and fair dealing. Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). This covenant provides that neither party “shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Id. at 471-72, quoting Druker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385 (1976). The covenant does not create rights and duties not otherwise provided for in the existing contractual relationship. Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004).
The contracts between Beckett and JCAM consist of the ROFR and the purchase and sales agreement, to which JCAM became a party once it exercised the ROFR. The “fruits" of both contracts entailed payment of the $1.3 million purchase price to Beckett in exchange for conveyance of Lot 1A. Beckett received that purchase price. JCAM timely offered to pay that price on the date of closing, and five days later, as long as Beckett did not seek to impose restrictions and easements that the Land Court has found were legally unwarranted. JCAM fully complied with the “time is of the essence of this agreement” provision and with the closing date of October 13, 2005.
JCAM was not a party to Beckett’s purchase and sales agreement for 68 Moore Road and so had no obligation thereunder. Even apart from JCAM’s willingness to close and pay 'the full purchase price on time, Beckett (Memo at 11) cites no contractual language to support his assertion that one of his rights-under the Traquina P&S “was the ability to use proceeds for this closing to finance his purchase of the Bowen home.” That critical element of his claim was simply not part of the contract. Nor was the unlawful deed restriction, which JCAM had eveiy right to resist. It follows that JCAM and Gold did not deprive Beckett of the fruits of any contract to which they were parties and, therefore, there was no violation of the covenant of good faith and fair dealing as a matter of law. The defendants áre entitled to summary judgment on Count II.
The misrepresentation claim stands on a different footing. The fact upon which JCAM primarily relies— that none of Beckett’s damage was caused by reliance upon anything JCAM or Gold said or did—is squarely disputed, with sufficient evidentiary support. Beckett states that, had he learned of Mr. Gold’s true intentions on August 18, 2005, he would have realized that his ability to sell Lot 1A before the closing on 68 Moore Street was seriously compromised. On summary judgment, it is reasonable to infer that an application for a bank loan, without funds to pay the balance of the $1.425 million purchase price, would have resulted in a rejection. Such a rejection was grounds for avoiding the obligations under the mortgage contingency clause of the P&S for 68 Moore Street. While JCAM states that Beckett’s argument is speculative and contemplates a misuse of the mortgage contingency clause, the plaintiff has adduced not only the facts concerning the $1.2 million additional funds due at closing (the magnitude of which may itself support the inference he advocates), but also the affidavit of his mortgage broker attesting to the materiality of that sum to Beckett’s ability to obtain a mortgage commitment. A fact-finder could infer that the lack of $1.2 million would cause a reasonable lender to deny a loan. These facts call for application of the rule that “Defiance normally is a question for a jury.” Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 (2004).
It is also true that Beckett was required to undertake reasonable mitigation, but a fact-finder must determine whether or not it was reasonable for Beckett to decline to close on the sale to JCAM knowing that a suit from Traquina was highly likely. See Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 585-87 (1982). Beckett was in a difficult situation, and it is not for the court to say what was reasonable in the circumstances. The defendants’ summary judgment motion is denied as to Count 1.[1]
II.
In his motion for summary judgment, Gold claims the protection of G.L.c. 114, §1B, which reads:
A person who serves as director, officer or trustee of a nonprofit cemetery qualified as a tax exempt organization under section 501(c) of the Internal Revenue Code and who is not compensated for those services shall not be liable for an act or omission resulting in damages or injury to another person if that person so serving was acting in good faith and within the scope of his official functions or duties, unless the damage was caused by an act or omission intentionally designed to harm, or by a gross negligent act or’omission which results in harm to a person.
Beckett disputes that Gold acted with good faith. He bears the burden of proof on this issue. See Mucci v. Brockton Bocce Club, Inc., 19 Mass.App.Ct. 155, 158 (1985). A finding of bad faith “carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.” Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation, 424 Mass. 430, 454 (1997) (citations omitted), partially abrogated on other *103 grounds by In re Birchall, 454 Mass. 837, 852-53 (2009).
Gold testified that at the time of his August 18 letter, he did not intend to purchase the property if restrictions of the type contained in section 4(f) of the Traquina P&S had been recorded. Beckett has introduced evidence from which a jury could find that Gold made statements regarding JCAM’s intentions that he knew to be false when made. Such intentional conduct, if proved, may satisfy the “dishonest purpose” or “conscious doing of wrong” tests. Cf. Breault v. Chairman of the Bd. of Fire Comm’rs of Springfield, 401 Mass. 26, 33 n.7 (1987) (common-law immunity not applicable to intentional ministerial acts of defendants).[2] Gold’s motion must therefore be denied because Beckett has, with evidentiary support, squarely contested the very facts upon which Gold’s Rule 9A(b)(5) statement relies.
III.
Both parties seek summary judgment on JCAM’s counterclaim alleging that Beckett breached his obligation of good faith and fair dealing by insisting on recording the restrictions contained in section 4(f) of the Traquina P&S. JCAM relies upon the issue preclusion impact of the Land Court’s decision, as well as the history of the transaction, in the event that the matter must be litigated de novo. In support of his summary judgment motion and opposition to JCAM’s, Beckett contests that issue preclusion applies and argues that JCAM has not proven any damages.
The Land Court held that “(b]y insisting on recording the Declaration pursuant to Section 4(f), Beckett frustrated the purpose for which JCAM’s predecessor purchased the ROFR, and so failed to act in good faith as a matter of law.” That ruling precludes relitigation of that issue, because it was necessary to the Land Court’s decision on both Beckett’s counterclaim and JCAM’s complaint,[3] which required Beckett to close without recording the section 4(f) restrictions. Nor does this case involve a different issue, as Beckett contends. The Land Court (pp. 5-8) specifically applied the same “good faith” test that applies to a breach of the contractual obligation of good faith and fair dealing. See Mucci, 19 Mass.App.Ct. at 158 n.4 (1985). The crux of the Land Court’s ruling is that Beckett violated the ROFR by violating the covenant of good faith and fair dealing.
Moreover, the facts (including those recited on pages 10-11 of JCAM’s Memorandum in Support of its Motion for Summary Judgment) demonstrate beyond question that the section 4(f) restrictions employed unlawful means to deprive JCAM of the valuable rights in the ROFR. Even if the Land Court’s statements about good faith and fair dealing were dicta, I conclude that the undisputed facts in the summary judgment record of this case establish the truth of the Land Court’s statements anew.[4]
In particular, the section 4(f) restrictions were a sham, having no meaning in the context of a sale from Beckett to Traquina. As the Land Court found:
The Use Restrictions served no purpose for Traquina, who, as buyer, could have chosen unilaterally to restrict the use of Locus to residential purposes. Likewise, the Use Restrictions served no purpose for Beckett, who stood to gain nothing from its inclusion in the Traquina P&S, and further, could not have enforced them. See Brear v. Fagan, 447 Mass. 68, 71-76 (2006).
Beckett, slip op at 7. The section 4(f) restrictions identified no party or land to be benefited and, indeed, there would be no beneficiary in the event of a Beckett to Traquina sale. Traquina proposed section 4(f) to make the offer “less attractive to the cemetery.” Beckett may or may not have shared this motive, but his insistence upon recording the section 4(f) restrictions had the necessary consequence of depriving JCAM of the fruits of the ROFR.
In these respects, this case differs significantly from Uno Rests., 441 Mass. at 384-89, in which the contested provision bound the parties to the agreed-upon purchase price. Section 4(f), by contrast, was a non-economic term that did not impose any obligation upon Beckett; it merely stated a permitted encumbrance in the deed to be delivered at closing. As a restriction, it was unenforceable under G.L.c. 184, §27 (restrictions must identify a specific person or land to be benefited). Moreover, any such restriction was for the benefit of the buyer, which (once JCAM became the buyer) no longer wanted it. It is true that, in Uno Rests., 441 Mass. at 376, the Court stated that “(a]ny potential motive on behalf of a third-parfy bidder cannot be imputed to the property owner where there is no evidence of collusion between the owner and the third-party offeror.” Here, however, there is no need to impute any motive. Beckett’s liability flows from his own actions, namely his insistence upon recording unlawful restrictions to JCAM’s detriment when he was under no obligation to do so.[5] It follows that JCAM is entitled to summary judgment as to liability on its claim that Beckett breached his obligation to JCAM of good faith and fair dealing. See Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 228 (7th Cir. 1996), cited in Uno Rests., 441 Mass. at 387.
JCAM claims two types of damages as a result of the breach: payment of an inflated purchase price and the costs and expenses of the Land Court litigation, including attorneys fees. Beckett challenges the damages claims both on the facts and the law.
Beckett argues that JCAM had no damages in fact, because the purchase price was not inflated. As moving party, he bears the burden of proof, which he has attempted to do by citing (1) statements in JCAM’s minutes estimating an “approximately $1.25 million” market rate and authorizing a $1.5 million offer and (2) JCAM’s efforts to purchase the property for $1.3 *104 million pursuant to the ROFR and the Traquina P&S. JCAM introduced evidence that the reference to $1.5 million in its minutes is a typographical error, which creates an issue of fact.
JCAM’s decision to purchase the property for $1.3 million under the circumstances does not refute the allegation that the price was inflated, as JCAM had to match the price or lose its rights under the ROFR. In Mucci, 19 Mass.App.Ct. at 157, the plaintiff initially exercised his right of first refusal, but then refused to close on the ground that the purchase price was artificially inflated. The Court held that he lost his right to purchase the property because he failed to abide by the terms of the purchase and sales agreement, even though he brought suit before the closing date. It stated: “Mucci would not have been completely without a remedy had he exercised his purchase rights in a timely fashion and then subsequently prevailed in the litigation on the issue of bona fides. He could have pursued a claim for damages or rescission.” Id. at 161. Here, JCAM did not lose its right to seek damages for an inflated purchase price when it followed Mucci instead of jeopardizing all of its rights to the property and damages by declining to close. A contrary holding would condone offers inflated by valuable but unlawful conditions and conflict with Mucci
The only additional evidence Beckett cites—the approximately $1.25 million estimate in the minutes— actually establishes that JCAM incurred some damage, as the number is indisputably below the $1.3 million price paid, albeit by considerably less than JCAM seeks.
Beckett’s failure to meet his burden as moving party makes it unnecessary to evaluate JCAM’s evidence, which includes appraisals of Lot 1A for $640,000 and $670,000 (unaccompanied by affidavit) and subsequent, late-filed affidavit and appraisal confirming six-figure damages. Where Beckett submitted no appraisal of his own, JCAM would only need to submit an appraisal if Beckett had submitted a sufficient showing to support his claim on summary judgment. JCAM may pursue damages for the allegedly inflated purchase price.
Beckett also challenges JCAM’s entitlement to recover the attorneys fees and expenses incurred in the Land Court action. That action is separate and distinct from this one and was necessary to secure JCAM’s rights under the ROFR. Accordingly, this element of damages is not necessarily barred by the principle that “no recovery may be had for counsel fees in the very action to redress a plaintiffs wrong, as distinguished from other counsel fees which the plaintiff has been compelled to pay.” Donaldson v. Boston Herald-Traveler Corp., 347 Mass. 274, 280-81 (1964). Because no contract, stipulation or statute permits an award of fees and costs, the legal question in this case is whether “rules concerning damages permit recovery of costs.” Connolly v. Sullivan, 76 Mass.App.Ct. 316, 318 (2010).
Assuming for the sake of argument that the rules of damages for breach of a contract like the ROFR generally do permit recovery for attorneys fees and costs incurred in a separate action to enforce the ROFR, those rules also require proof of actual damages caused by the breach. See generally Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 499 (1997). That is, unlike statutory entitlements which may reward pro bono services or allow recovery for services for which the client is not otherwise liable,[6] JCAM must show that recovery of fees and costs is necessary to place it in as good a position as if Beckett had performed the contract. Id. Awarding fees and costs as damages for a breach of contract does not meet that test unless the injured party has actually been injured by paying for or becoming liable for those costs. Here, Beckett has shown that JCAM has not paid attorneys fees or costs of the Land Court action and will not do so unless this court awards fees or costs. Put another way, when it comes to fees and costs, JCAM is already in as good a position as if full performance had occurred. It has therefore failed to establish this element of damages.
The Court grants summary judgment to JCAM, establishing Beckett’s liability for breach of the covenant of good faith and fair dealing. As to damages, summary judgment will enter for Beckett on the claim for attorneys fees and costs. Summary judgment is denied as to the allegations of inflated purchase price.
IV.
For the above reasons, it is not necessary to rule on either (1) Plaintiff Perry A. Beckett’s Motion to Strike Appraisals Included by Defendants in Summary Judgment Record as Inadmissible Hearsay or (2) Defendants’ Motion to Supplement the Summary Judgment Record. Both motions are therefore denied as moot. I add, parenthetically, that based upon the thin summary judgment record on which the plaintiff relies, the ample notice provided by answers to interrogatories and inclusion of unsworn appraisals in the summary judgment opposition and the principle favoring adjudication on the merits rather than upon technicalities, I would grant the latter motion if the issue were not moot.
ORDER
After review of the parties’ written submissions, after hearing and for the above reasons, the Court orders as follows:
1. Defendants’ Joint Motion for Summary Judgment is DENIED as to Count 1 of the Complaint (deceit/misrepresentation), ALLOWED as to Count 2 of the Complaint (good faith and fair dealing) and ALLOWED AS TO LIABILITY ONLY on JCAM’s counterclaim.
*105 2. Defendant Gold’s Motion for Summary Judgment is DENIED.
3. Plaintiffs Motion for Summary Judgment on Counterclaim on Jewish Cemetery Association of Massachusetts, Inc. is DENIED as to liability and the alleged inflated price, but ALLOWED as to attorneys fees.
4. Plaintiffs Motion to Strike Appraisals Included by Defendants In Summary Judgment Record as Inadmissible Hearsay is DENIED AS MOOT; and
5. Defendants’ Motion to Supplement the Summary Judgment Record is DENIED AS MOOT.

 agree with Beckett that the Land Court did not foreclose litigation of Counts I and II. Its judgment was expressly without prejudice to Beckett’s right to bring the deceit and breach of duty of good faith and fair dealing counts in this court.

Although G.L.c. 114, §1B appears not to have been construed, it may be analogized to other good faith immunity doctrines, such as those that protect public officials, but those analogies do not help Gold. See, e.g. Nelson v. Salem State College, 446 Mass. 525, 537-38 (2006) (honest belief that the facts allowed the challenged activity), and cases cited.

While the Court also determined that the section 4(f) restrictions were not a “bona fide offer” under the ROFR, the discussion at pages 5-8 of the Land Court’s decision focuses overwhelmingly on the contractual obligation of good faith and fair dealing, as articulated in the Uno Rests. Case, which the Land Court discussed thoroughly.

I reject Beckett’s suggestion that there are disputed facts on the question. The fact that Beckett consulted with an attorney before agreeing to the Traquina P&S does not justify the continued insistence on the section 4(f) restrictions after JCAM exercised its right nor does it justify the refusal to close the sale. See Uno Rests., 441 Mass. at 385 (“The duty of good faith and fair dealing concerns the manner of performance”). JCAM need not show that Beckett had a specific intent to harm it where, as here, there was an intent to insist on the section 4(f) restrictions which Beckett knew would deprive JCAM of the benefits of the ROFR—i.e. would have “the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony's Pier Four, 411 Mass. at 471-72 (emphasis added). The dispute over whether Beckett believed JCAM—a single-purpose cemetery corporation—had acquired the ROFR for the sole purpose of cemetery expansion is not material, where Beckett admits that he knew of JCAM’s desire to expand its cemetery.

Beckett asserts that Mr. Traquina’s wealth made him “an unwelcome litigation adversary.” Quite properly, he does not assert that his choice of litigation adversaries is a defense to breach of the covenant of good faith and fair dealing. As noted in footnote 3 above, the covenant does not require specific intent to injure, and a motive to choose a weaker, non-profit opponent in court over a richer one hardly could prove good faith in any event.

See, e.g. United. Cos. Lending Corp. v. Sargeant, 32 F.Sup.2d 21, 25 (D.Mass. 1999) (attorneys fees for a pro bono attorney under G.L.c. 93A), cited in Siegel v. Berkshire Life Ins. Co., 70 Mass.App.Ct. 318, 323 (2007).