COMMONWEALTH vs. RAUL GARCIA.

No. 97-P-2043.

Suffolk. January 12, 1999. - March 15, 1999.

Present: GREENBERG, KAPLAN, & LENK, JJ.

*Receiving Stolen Goods. Practice, Criminal,* Instructions to jury. *Evidence,* Opinion.

At the trial of a complaint for receiving a stolen motor vehicle, the judge erred in declining to instruct the jury that the Commonwealth had to prove that the defendant intended to deprive the owner of the vehicle, and a new trial was required. [468-470]

COMPLAINT received and sworn to in the Boston Municipal Court Department on February 21, 1997.

The case was tried before *Mark Hart Summerville, J.*

*John J. Amendolare* for the defendant.

*Jennifer M. Callahan* for the Commonwealth.

KAPLAN, J. The Boston Municipal Court on February 21, 1997, issued a criminal complaint against the defendant Raul Garcia charging that on December 15, 1996, he received a stolen motor vehicle, a Lincoln Continental, G. L. c. 266, § 28(*a*) (count A); received stolen property valued at more than $250, a teakwood box and contents, G. L. c. 266, § 60 (count B); and operated a motor vehicle after his license had been suspended, G. L. c. 90, § 23 (count C). A jury found the defendant guilty of the A and C counts, but not guilty of count B. The defendant appeals. We reverse the count A conviction for error in the judge's instructions.[1]

Karen Lynch drove her mother in her mother's 1994 Lincoln Continental to a party in the South End section of Boston. Both

---

[1]The defendant was sentenced to two years in a house of correction on count A and ten days on count C, to be served concurrently with count A. Execution of the sentences was stayed by a single justice of this court pending the result of the present appeal.

passed time there. When they left the party at 1:00 A.M., the car was gone, evidently stolen in a brief interval when it was left unguarded with the key in the ignition. They went to a police station and reported the theft.

About 7:15 P.M. the next day, Karen, who lived with her mother, answered the telephone: the caller said he had come upon the Continental while walking with his girlfriend near Orchard Park, a rough neighborhood. Thinking the car was out of place, perhaps stolen, he looked in, saw the key in the ignition, and reached into the glove compartment and found the registration in Ruth Lynch's name. The caller, after some talk, said he would go back and better locate the car so the police could reclaim it; he would call back in twenty minutes.

He called back as promised, giving his name, "Raul," and said he had decided it would be best to move the car out of the neighborhood and so had driven it to his own house. When Karen proposed that he give her his address so the police could pick up the car, Raul said he would meet her anywhere. Finally, he agreed to Karen's suggestion that he drive the car to the police station (the one to which Karen and Ruth had reported the loss), where Karen would meet him. Then Raul said his girlfriend had asked him to inquire about a reward for returning the car. Karen said she had little money this time of year; they would discuss this matter when they met. Karen's suggestion of the meeting place was at the insistence of the police, with whom she had communicated; she phoned Sergeant Richard Daley that the agreed time was 9:00 P.M. Daley told Karen to stay put; the police would handle it.

Daley arranged for a civilian clerk at the station to stand in for Karen. Raul drove up at the station and the officers took over. The car was in excellent condition. Reporting by telephone that the car had been recovered, Daley asked Karen about any property to be found in the car, and she mentioned a teakwood box containing a number of CDs of Christmas music. The police did not find the box in the car, and when Raul was asked whether he was aware of any missing items, he said no, and to show his "good faith" he invited the officers to search his apartment. The police accepted the invitation. Entering the apartment, they saw the box on a coffee table.

The foregoing summarizes the Commonwealth's case.[2] The defendant took the stand in his own behalf. The defendant's theme was that he intended throughout to return the car to the owner (and in effect had done so). However, he now said he found the car at home, in his own parking space, but told Karen a different story to avoid having the police come to his house, a visit that might be resented by his neighbors who may in fact have stolen the car. About the teakwood box, it came from the car; he said he told the officers his girlfriend had brought it into the apartment and he invited the officers to the apartment to pick it up.

When counsel offered their suggestions to the judge about jury instructions, defense counsel made one point with emphasis: the crime of receiving stolen goods, whether in the context of count A (motor vehicle)[3] or of count B (property in general),[4] would not be consummated by the accused merely entering upon possession of the object, knowing or believing the object to be stolen; the further requirement — the quo animo — is that he be shown to have intended to deprive the owner of the object. This proposition is correct on principle and is confirmed in our cases. Thus in *Commonwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 599 (1988): "[A] defendant may be convicted of receiving stolen property 'if he either knew or believed [the] property was stolen property at the time it came into his possession, or at any time while it was in his possession he ascertained that it was stolen property and he undertook to deprive the owner of his rightful use of it,' " quoting from *Commonwealth* v. *Kronick*, 196 Mass. 286, 288 (1907), and further citing *Commonwealth* v. *Peopcik*, 251 Mass. 369, 371 (1925), *Commonwealth* v. *Sandler*, 368 Mass. 729, 740-741 (1975), and *Commonwealth* v. *Settipane*, 5 Mass. App. Ct. 645, 651 (1977).

The Model Penal Code makes the same point in its definition of "receiving stolen property":

[2]As testified to by Karen and Ruth Lynch, Sergeant Daley, and Officer Frank Griffiths (Daley's partner).

[3]General Laws c. 266, § 28(*a*), as appearing in St. 1988, c. 273, § 58: "Whoever . . . buys, receives, possesses, conceals, or obtains control of a motor vehicle or trailer, knowing or having reason to know the same to have been stolen, . . . shall be punished . . . ."

[4]General Laws c. 266, § 60, as amended through St. 1987, c. 468, § 4: "Whoever buys, receives or aids in the concealment of stolen . . . property, knowing it to have been stolen . . . shall, . . . if the value of such property exceeds two hundred and fifty dollars, be punished . . . ."

"Section 223.6. Receiving Stolen Property

"(1) *Receiving.* A person is guilty of theft if he purposely receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with purpose to restore it to the owner. . . . "[5]

The current Model Jury Instructions for Use in the District Court (1995) also speaks to the question. The instruction 5.32 recommended for use in receiving stolen property carries a supplemental instruction 3 which recognizes that intention to deprive is integral to the offense.[6] The model instruction 5.321 on motor vehicle cases does not itself append a supplemental instruction on "deprivation" but a judge would be bound to charge in the sense of supplemental instruction 3. On this question of intention there is no basis in reason to distinguish between motor vehicles and other property. Here the judge charged according to supplemental instruction 3 as to the teakwood box and contents but declined, over clear objection by the defense, to charge similarly in respect to the motor vehicle. This was error, and it calls for reversal of the judgment on count A. It is a matter of some interest that the jury, instructed according to 3 as to count B, returned a verdict of not guilty upon it, but, not thus instructed as to count A, brought in a guilty verdict.

Although unnecessary to our decision, we observe that the judge also erred in admitting certain testimony by Sergeant Daley. The prosecutor asked Daley: "Could you have placed [the defendant] under arrest at his apartment? Based on what you learned during your investigation?" (Defense objection overruled.) A. "I felt so, yes." Q. "And why is that?" A. "Because I felt enough probable cause had developed in my mind." (Defense objection overruled.) The colloquy was inadmissible: it was an opinion on a question of law testified to by one not

---

[5]The commentary on § 223.6 notes the substantial similarity of meaning and result between the "unless" clause of the code definition and the more conventional statement about "depriving" the owner of use of the goods. See Model Penal Code and Commentaries § 223.6, at 237 (1980).

[6]Supplemental instruction 3 states: "Even if the defendant did not know that the property was stolen at the time when he (she) received it, the defendant is still guilty of receiving stolen property if he (she) subsequently learned that the property had been stolen, and at that point decided to keep it and to deprive the owner of its use."

qualified as a legal expert (and based, moreover, on unstated facts). Typically the legal question, whether an arrest could be justified by reason of the existence of probable cause, is a question reserved for decision by the judge. See *Commonwealth* v. *Blake*, 413 Mass. 823, 826-827 (1992). The defendant suggests also that this testimony approached, if it did not constitute, the expression of an opinion that the defendant was guilty of the crimes charged — prohibited territory for a witness. See *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995).

The judgment on count A is reversed and the verdict is set aside. The judgment on count C will stand, as it is not attacked on this appeal.

*So ordered.*