OFFICE ONE, INC., & another[1] vs. CARLOS M. LOPEZ & others,[2]
individually and as trustees,[3] & others.[4]

Norfolk. April 4, 2002. - June 11, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government.
*Condominiums,* Management of trust. *Practice, Civil,* Attorney's fees,
Costs.

There was no abuse of discretion or error of law in a Superior Court judge's
    allowance of the defendants' special motions to dismiss, pursuant to the
    anti-SLAPP statute, G. L. c. 231, § 59H, with respect to counts of a
    complaint alleging interference with advantageous business relations,
    defamation, and interference with contractual relations where, although the
    defendants' activity was not motivated by a matter of public concern, all of
    the defendants' conduct alleged as unlawful fell within the broad definition
    of petitioning activity protected by the statute, and where the plaintiffs
    failed to show, by a preponderance of the evidence, that the defendants'
    petitioning activity was devoid of any reasonable factual support or any
    arguable basis in law. [120-124]
In an action against the trustees of a condominium trust, certain owners of
    residential units in the condominium, and the condominium's legal counsel
    arising from the plaintiffs' purchase of condominium units and parking
    spaces, summary judgment was properly allowed in favor of the trustees
    on the plaintiffs' claims of breach of fiduciary duty and violation of G. L.
    c. 93A, where members of the governing board of the condominium as-
    sociation, in the capacity of the trustees, owed no fiduciary duty to
    individual condominium unit owners, and where the trustees, as members
    of a voluntary governing board of a private organization of unit owners,
    were not engaged in trade or commerce and therefore not within the
    purview of G. L. c. 93A. [124-125]
A Superior Court judge acted within her discretion in awarding attorney's fees
    and costs pursuant to the anti-SLAPP statute, G. L. c. 231, § 59H, for
    legal work on claims other than those ultimately dismissed pursuant to the
    statute, where the language of the statute could be interpreted to mean that

[1]Pilgrim Telephone, Inc.

[2]Jacqueline S. Sullivan, Bryan Chegwidden, Nicholas Porcaro, Lynn H.
Moore, James E. Gado, Gale Raphael, and Jill Herold, individually.

[3]Of the River Court Condominium Trust.

[4]Thomas Sansone and Linda Sansone; James Stanley and Joan Stanley; V.
Douglas Errico; and the law firm of Marcus, Goodman, Emmer & Brooks,
P.C.

attorney's fees and costs were mandatory for successful special motions, and that the amount of the award did not need to be limited to legal work incurred in bringing the special motion itself. [125-127]

CIVIL ACTION commenced in the Superior Court Department on December 11, 1996.

Special motions to dismiss were heard by *Judith A. Cowin,* J., and the cases were heard by *Robert A. Mulligan,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alan Garber* (*Clair A. Carlson, Jr., & Davi M. Peters* with him) for the plaintiffs.

*Michael S. Greco* (*David E. Plotkin* with him) for Carlos M. Lopez & others.

*George A. Berman* (*Susan S. Riedel* with him) for V. Douglas Errico & another.

*Marc LaCasse,* for James Stanley & another, was present but did not argue.

*Scott Nussbum,* for Thomas Sansone & another, was present but did not argue.

GREANEY, J. Office One, Inc. (Office One), and Pilgrim Telephone, Inc. (Pilgrim), commenced this action in the Superior Court against the trustees of the River Court Condominium Trust (trustees), certain other owners of residential units at the River Court Condominium (River Court), as well as legal counsel for the trustees and River Court (condominium counsel). In their verified complaint, the plaintiffs alleged numerous tort and contract claims arising out of Office One's purchase from the Federal Deposit Insurance Corporation (FDIC) of four commercial units and thirty-six parking spaces at River Court and attempts by the various defendants, in the form of communications to the FDIC, municipal officials, State and Federal elected representatives, the building commissioner of Cambridge, and

other owners of units at River Court, to interfere with that purchase.[5]

Years of protracted litigation ensued. The plaintiffs ultimately were unsuccessful in establishing liability on the part of any of the defendants, and judgments of dismissal entered on all of their claims. In addition, the plaintiffs were ordered to pay attorney's fees and costs to all but two of the defendants, pursuant to G. L. c. 231, § 59H, commonly known as the anti-SLAPP statute. We transferred the plaintiffs' appeal to this court on our own motion to consider whether (1) the defendants' special motions to dismiss, brought pursuant to G. L. c. 231, § 59H, properly were allowed on the plaintiffs' claims of interference with advantageous relations, defamation, and intentional interference with contractual relations; (2) summary judgment in favor of the trustees properly was allowed on the plaintiffs' claims of breach of fiduciary duty and violation of G. L. c. 93A; and (3) attorney's fees and costs may be awarded pursuant to G. L. c. 231, § 59H, for legal work on claims other than those ultimately dismissed pursuant to that statute. We now affirm the judgments of dismissal and awards of attorney's fees and costs.

The following facts are undisputed. The plaintiff corporations are telecommunications providers. River Court is a condominium located in Cambridge and comprised of 166 residential units, eight office or commercial units, and an underground parking garage. In 1996, the FDIC held title to several commercial units and several parking spaces at River Court. On May 15, 1996, one of the defendants, Lynn H. Moore, a real estate broker and a member of the board of trustees of River Court, submitted a bid on behalf of private clients to the FDIC to purchase commercial units for $615,000. On June 5, 1996, Moore and the FDIC executed a purchase and sale agreement, which gave the FDIC until June 12 to accept her offer.

On May 28, 1996, David Silver, the president of both Office One and Pilgrim, who also owned a unit at River Court, notified the trustees that he had submitted an offer to purchase four units (one office and three commercial), as well as thirty-six parking

[5]The plaintiffs also sought a declaratory judgment pursuant to G. L. c. 231A, regarding the validity of condominium parking restrictions adopted by the trustees and enforced by the trustees against the plaintiffs.

spaces at River Court, from the FDIC. Silver desired to acquire these units in order to relocate the offices of Pilgrim, which had been operating several blocks away. According to Silver, his offer to the FDIC was subject to the trustees' agreement to several conditions, including that the proposed use by Pilgrim was consistent with controlling documents (use of commercial units and parking spaces at River Court is governed by special permit no. 55 [special permit], issued by the planning board of Cambridge; the River Court master deed [master deed]; and by River Court rules and regulations); that Pilgrim employees and visitors would have twenty-four hour access to the parking spaces acquired with the units; and that Pilgrim employees would have use of common areas such as the pool and health club.

Silver met with the trustees to discuss his proposal. Silver stated that if he purchased the units, Pilgrim would operate its administrative offices at River Court twenty-four hours a day, employing between fifteen and twenty-five people "per shift." The trustees in turn voiced concerns regarding the impact of his proposal on building security and potential overuse of common facilities and parking. In addition, the trustees informed Silver that use of River Court's parking spaces by Pilgrim employees working at the company's headquarters a few blocks away from the condominium was prohibited by the master deed.

In early June, Moore spoke with the FDIC several times regarding her clients' outstanding offer to buy the units at River Court. The FDIC informed Moore that it was considering several other confidential bids, and that it was calling for final offers to be submitted by June 27, 1996. In order to secure purchase of the units, Silver increased his offer to the FDIC by $100,000 to $650,000. His offer was accepted, and Silver and the FDIC signed a purchase and sale agreement on June 28, 1996. On July 2, 1996, Moore learned that her clients' bid had been unsuccessful.

On learning that Silver was the successful bidder on the units, the trustees held an open meeting of River Court unit owners, on July 22, 1996, to discuss Silver's imminent purchase of the units. Numerous trustees and unit owners expressed concern that Silver's purchase would displace commercial ten-

ants such as a dry cleaner and delicatessen, which provided necessary services to residents, and concerns regarding security and overuse of facilities such as the health club. In addition, some unit owners expressed concerns that Pilgrim would be operating a "telephone sex" business at River Court. When informed by the trustees that the condominium counsel would investigate the legal issues presented by his proposed use of the units and parking spaces, Silver responded that he might consider canceling his purchase of the units if such action could be accomplished without any financial loss to him.

Unit owner James Stanley and his wife, Joan (together, the Stanleys), who are defendants in this action, drafted and distributed to other River Court residents a leaflet opposing the sale of the units to Silver. The leaflet urged residents of River Court to sign a petition opposing the sale and to make contact with the FDIC and elected officials such as United States Senator John Kerry and United States Congressman Joseph Kennedy. The leaflet also contained sample letters which could be sent to Cambridge Mayor Sheila Russell; Cambridge City Councillor Timothy Toomey, Jr.; and State Senator Robert Travaglini. Thomas Sansone, another River Court resident, who is also a defendant in this action (as is his wife, Linda [together, the Sansones]), prepared a notice, which he then posted on a bulletin board at River Court, stating that Pilgrim was a provider of "phone sex lines"[6] and urging all unit owners to protest Silver's purchase of the units.

On July 24 and 25, the condominium counsel sought assistance from Congressman Kennedy's office in persuading the FDIC to rescind the purchase and sale agreement with Silver and re-open the bidding on the units. Petitions signed by unit owners were sent to the FDIC, Governor William Weld, United States Senator Edward Kennedy and Senator Kerry. On July 29, 1996, Congressman Kennedy's office informed condominium counsel that the closing on the sale of the units to Silver had

---

[6]According to the affidavit filed by Thomas Sansone in support of his special motion to dismiss, he investigated, and confirmed, this assertion when he opened an account with Pilgrim and obtained an authorization code that allowed him to access services offered by Pilgrim.

been postponed for two weeks. Silver, however, sent a letter to
the FDIC demanding that the closing take place as scheduled,
and, on or before August 1, 1996, the closing occurred. Office
One, then the record owner of five units at River Court,
subsequently leased one unit and nine of its newly acquired
parking spaces to Pilgrim.

The trustees continued to investigate the legality of Silver's
proposed use of the units and parking spaces. Among other
things, they requested the commissioner of the inspectional
services department of Cambridge (commissioner) to enforce
the special permit, which, they believed, mandated that no more
than fifteen parking spaces at River Court could be allocated to
commercial use. The commissioner subsequently notified the
trustees that as many as thirty-six parking spaces at River Court
currently were being used for commercial purposes and ordered
them to reduce the number of commercial uses to fifteen within
twenty-one days. The trustees then adopted a new regulation al-
locating the fifteen commercial parking spaces to River Court
commercial tenants on the basis of date of purchase. As a result
of the new regulation, Office One and Pilgrim were allocated
only five parking spaces for commercial use.

On November 13, 1997, Office One appealed the commis-
sioner's determination concerning the fifteen parking space
limitation to the Cambridge board of zoning appeals, and, on
January 28, 1998, the board upheld that determination. On
February 13, 1998, Office One filed an action in the Land Court
against the board, appealing from its decision. A judge in the
Land Court ruled that the special permit did not in fact
incorporate the fifteen space limitation and, therefore, the
board's zoning interpretation was invalid. Thereafter, the
trustees rescinded the parking regulations based on the commis-
sioner's zoning interpretation and waived all parking fines based
on violations of those regulations.

The plaintiffs' eight-count amended verified complaint al-
leged (1) interference with advantageous business relations
against Moore (Count I); (2) defamation against the Sansones

and the Stanleys[7] (Count II); (3) interference with contractual relations against all of the defendants (Count III); (4) breach of fiduciary duty against the trustees (Count V); (5) aiding and abetting the trustees' wrongful breach of fiduciary duty against the condominium counsel (Count VI); (6) civil conspiracy against the trustees and condominium counsel (Count VII); and (7) violations of G. L. c. 93A, against both the trustees and condominium counsel (Count VIII).[8]

A detailed account of the procedural history of each count of the plaintiffs' complaint is unnecessary. It suffices to say here that the defendants filed special motions to dismiss the counts against them, pursuant to G. L. c. 231, § 59H, on the ground that the plaintiffs' action was based on conduct and statements constituting petitioning activity within the scope of the anti-SLAPP statute.[9] A judge in the Superior Court agreed, and, on

---

[7]Also named in this count were other individuals of the "Committee to Protect River Court" "whose identities are presently unknown to [the p]laintiffs."

[8]Count IV sought a declaratory judgment pursuant to G. L. c. 231A in connection with the newly adopted parking regulations that restricted the plaintiffs' use of Office One's parking spaces. On April 12, 2000, a judge in the Superior Court allowed summary judgment on this count in favor of the trustees, on the ground that the decision of the Land Court, mentioned above, had resolved the issue, and, therefore, there was no longer an actual controversy between the parties. The dismissal of this count is not challenged on appeal.

[9]General Laws c. 231, § 59H, states in relevant part:

"In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. The court shall advance any such special motion so that it may be heard and determined as expeditiously as possible. The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

July 15, 1997, dismissed all of the counts in the plaintiffs' first amended complaint pursuant to the special motions.[10]

The same judge reconsidered the dismissal in light of principles enunciated, eight months later, in our decision of *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156 (1998), regarding the proper application of G. L. c. 231, § 59H, and revived the plaintiffs' claims against the trustees for breach of fiduciary duty and violation of G. L. c. 93A. On April 12, 2000, a different judge in the Superior Court allowed the trustees' motion for summary judgment on those claims, as set forth in the plaintiffs' second amended complaint, based on his determination, as to the former, that no fiduciary duty existed between trustees of a condominium and owners of condominium units and, as to the latter, that the relationship between the trustees and the plaintiffs was not one involving "trade or commerce," and, therefore, G. L. c. 93A did not apply.

At various times throughout the litigation, reasonable attorney's fees and costs were awarded to all but two of the defendants,[11] pursuant to G. L. c. 231, § 59H, which provides that "the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters." In light of the judge's reconsideration of the trustees' special motion to dismiss following the *Duracraft* decision, and subsequent denial of that motion with respect to two of the counts against the trustees, the plaintiffs moved to vacate the order allowing the trustees' motion for attorney's fees and costs. The plaintiffs' motion was denied. We now turn to the issues presented by this appeal.

1. We first consider the plaintiffs' claim that the judge improperly allowed the defendants' special motions to dismiss, pursuant to G. L. c. 231, § 59H, with respect to Counts I, II,

---

[10]On reconsideration, on October 2, 1997, that part of Count VIII alleging violations of G. L. c. 93A against condominium counsel was dismissed pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The plaintiffs do not appear to challenge this dismissal.

[11]Attorney's fees and costs incurred by James and Joan Stanley in connection with the filing of their special motion to dismiss pursuant to G. L. c. 231, § 59H, were not allowed, based on the judge's determination that their application for attorney's fees and costs was not sufficiently specific.

and III.[12] We review the judge's allowance of the defendants' special motions to dismiss to determine whether there was an abuse of discretion or error of law.

The plaintiffs maintain that their claims are not subject to a special motion to dismiss because, unlike a "classic SLAPP case" involving a nonmeritorious lawsuit designed to intimidate or silence an opposing party, their lawsuit is against a group of "politically connected individuals in an upscale condominium complex, who attempted through wrongful means to prevent the sale and subsequent use of condominium units and parking spaces in a wholly private transaction." They argue that allowing the defendants' special motions to dismiss, on these facts, effectively shields these individuals from liability for otherwise unlawful actions and "illustrates the potential for harm which can occur to the non-moving party through the misapplication of the anti-SLAPP statute." We disagree.

General Laws c. 231, § 59H, protects the "exercise of [the] right of petition under the constitution of the United States or of the [C]ommonwealth," by creating a procedural mechanism, in the form of a special motion to dismiss, for the expedient resolution of so-called "SLAPP" suits.[13] Although it is true that "[t]he typical mischief that the legislation intended to remedy was

[12]We need not consider whether Counts VI and VII were properly dismissed pursuant to G. L. c. 231, § 59H. Those counts were premised on the failure of the trustees and condominium counsel to notify the plaintiffs of the original decision of the commissioner of the inspectional services department of Cambridge (commissioner), adverse to the plaintiffs, regarding permitted commercial use of the condominium parking spaces. On September 24, 1998, in reconsidering the special motions to dismiss with regard to these counts, the judge determined that the commissioner's decision was not, in fact, a final decision for purposes of the relevant appeal period, and so the plaintiffs could not have been harmed, as alleged in their amended complaint, by their inability to file a timely appeal. The judge concluded, therefore, that these claims were, essentially, moot. We agree, particularly in light of the plaintiffs' subsequent (and successful) appeal from the commissioner's decision to the Land Court. We see no basis either for the plaintiffs' nugatory claim that these counts should result in a trial because they have suffered "uncertain[ty]" damages.

[13]"SLAPP" is an acronym for Strategic Lawsuit Against Public Participation. "SLAPP" suits generally target individuals for "reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency

lawsuits directed at individual citizens of modest means for speaking publicly against development projects," *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 161, the statute provides broad protection for other petitioning activities as well. See *id.* at 162-163 ("In [G. L. c. 231, § 59H,] as enacted, the Legislature . . . did not address concerns over its breadth and reach, and ignored its potential uses in litigation far different from the typical SLAPP suit"). See also *McLarnon* v. *Jokisch*, 431 Mass. 343, 347 (2000). It is not necessary that the challenged activity be motivated by a matter of public concern. See *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 164.

To invoke the statute's protection, the special movant need show, as a threshold matter, through pleadings and affidavits, that the claims against it are, in fact, "based on" its petitioning activities alone and have no substantial basis other than or in addition to its petitioning activities. See *id.* at 167-168. Contrary to the plaintiffs' apparent belief, the motive behind the petitioning activity is irrelevant at this initial stage. See *Fabre* v. *Walton*, 436 Mass. 517, 523-524 (2002). The focus solely is on the conduct complained of, and, if the *only* conduct complained of is petitioning activity, then there can be no other "substantial basis" for the claim. See *id.* at 524.

The defendants have met their burden. An examination of the plaintiffs' amended verified complaint reveals that Counts I, II, and III are based, respectively, on (1) Moore's communications with the FDIC seeking to secure the purchase of the units for her clients; (2) communications by unit owners at River Court urging other unit owners to petition against the FDIC's sale of condominium units and parking spaces to Silver[14]; and (3) communications with the FDIC and with elected officials in

protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161-162 (1998), quoting Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 5 (1989).

[14]These communications were in the form of statements at open meetings that Pilgrim was a "sleazy operation" of "dubious character," whose presence at River Court posed a "significant threat to property values and to the personal and physical security of its residents," and a leaflet, prepared and posted on the River Court bulletin board by Thomas Sansone, that listed, in explicit detail, telephone services of a sexual nature allegedly provided by Pilgrim.

further efforts to prevent that sale. All of the conduct alleged as unlawful falls within the broad definition of petitioning activity protected by the statute. See G. L. c. 231, § 59H (defining right of petition as "any written or oral statement . . . made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding [or] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding [or] any statement reasonably likely to enlist public participation in an effort to effect such consideration").[15] It then falls to the plaintiffs to demonstrate the merit of their claims by showing, by a preponderance of the evidence, that (1) the defendants' petitioning activity is devoid of any reasonable factual support or any arguable basis in law, and that (2) the activity caused the plaintiffs actual harm. See G. L. c. 231, § 59H; *Baker* v. *Parsons*, 434 Mass. 543, 553 (2001); *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 165. The plaintiffs have failed to make the requisite showing with respect to any of the three counts.

(a) *Count I: interference with advantageous business relations.* At the time Moore contacted the FDIC in connection with Silver's bid on the River Court units, Moore had been engaged in good faith negotiations with the FDIC to purchase the units on behalf of her clients. As the judge dealing with the special motions to dismiss recognized, in her July 15, 1997, memorandum of decision, Moore's "entitlement to petition the FDIC and seek allies to strengthen her effort exists notwithstanding the fact that she was doing so purely for economic self-interest." Any communications with the FDIC that may have been made by Moore regarding Silver's interest in purchasing the units were reasonably based in fact and in law.

(b) *Count II: defamation.* There is no merit to the plaintiffs' contention that defamation claims may not be dismissed under G. L. c. 231, § 59H. The defamation claim, however, could

[15]The judge correctly determined that communications with the FDIC constitute petitioning activity under G. L. c. 231, § 59. See *United States* v. *Sweeney*, 226 F.3d 43, 46 (1st Cir. 2000) (even when acting as receiver, FDIC acts "in the name of, or on behalf of, the United States" to promote stability of banking system).

have survived the special motions had the plaintiffs demonstrated that the alleged defamatory statements not only were objectionable to the plaintiffs or motivated by self-interest, but also lacked "any reasonable factual support." See *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 165.

(c) *Count III: intentional interference with contractual relations.* The factual support for the petitioning activity underlying this claim was provided by Silver himself. Silver had indicated that Pilgrim operated on a twenty-four hour schedule; that he intended to allow off-site employees to park at River Court and to use its health club facilities; and that he intended to displace established businesses that served the River Court community. The various defendants had a clear interest in resolving the legal issues presented by his proposed use and were entitled to contact the FDIC and elected officials to request their review of the FDIC sale.

Because the plaintiffs failed to show that the petitioning activity in issue was devoid of any reasonable factual basis or basis in law, it is not necessary to reach the question whether the activity caused the plaintiffs actual injury. There was no abuse of discretion or error of law in the judge's decision to grant the defendants' special motions to dismiss Counts I, II, and III, pursuant to G. L. c. 231, § 59H.

2. We reject the plaintiffs' claim that summary judgment was improperly granted in favor of the trustees on Counts V and VIII. It is relevant to our discussion of these counts that the trustees are, or were, duly elected members of the River Court Condominium Trust, established under a declaration of trust dated February 21, 1989 and recorded with the Middlesex registry of deeds, and that they serve as volunteers, without remuneration. Both counts are based on allegations that the trustees attempted to restrict, or otherwise interfere with, the plaintiffs' lawful use of units and parking spaces at River Court.[16]

Count V charges the trustees with breach of fiduciary duty.

---

[16]According to the plaintiffs' second amended verified complaint, these attempts included adopting "unfair and discriminatory" parking restrictions; denying the plaintiffs access to the River Court telephone utility closet; commencing "unjustified, needless and wasteful" enforcement actions with regard to the plaintiffs' use of parking spaces; demanding that a Pilgrim employee

The plaintiffs cannot succeed on this claim, however, because, as matter of law, members of a governing board of a condominium association, in the capacity of the trustees here, owe no fiduciary duty to individual condominium unit owners. See *Cigal* v. *Leader Dev. Corp.*, 408 Mass. 212, 219 (1990). A decision of the Appeals Court relied on by the plaintiffs, *McEneaney* v. *Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573 (1995), establishes only that a condominium trust may be liable to a unit owner for nuisance. Contrary to the plaintiffs' suggestion in their brief, the Appeals Court specifically declined to define the duty owed by the trustees to the individual unit owners. See *id.* at 579. Any duties of a fiduciary nature that may be owed in this context run to the condominium trust, and not to the plaintiffs themselves. See *Cigal* v. *Leader Dev. Corp.*, *supra.*

Count VIII, charging violations of G. L. c. 93A, fails as well. Violations of G. L. c. 93A require unfair or deceptive acts or practices "in the conduct of any trade or commerce." G. L. c. 93A, § 2. The trustees, however, are members of a volunteer governing board of the organization of unit owners at River Court, and are not engaged in trade or commerce. It is evident from the complaint that the G. L. c. 93A claim arises exclusively from the private relationship between the trustees and the plaintiffs as condominium unit owners. Transactions that are "principally private in nature . . . do not fall within the purview of G. L. c. 93A." *Zimmerman* v. *Bogoff*, 402 Mass. 650, 662 (1988). See *Riseman* v. *Orion Research Inc.*, 394 Mass. 311, 313-314 (1985).

Because the plaintiffs failed to state claims upon which relief could be granted, summary judgment was properly allowed on Counts V and VIII.

3. The plaintiffs challenge awards of attorney's fees and costs granted after the special motions to dismiss were allowed with respect to all of the counts in their complaint. The plaintiffs argue that, after the reinstatement of several of the counts following the *Duracraft* decision (and subsequent dismissal of those counts on other grounds), these awards should have been

---

cease use of River Court's health club; and falsely representing to the plaintiffs that no storage space was available for their use at River Court.

modified to· allocate attorney's fees only for time spent in defending Counts I, II, and III, the counts actually dismissed pursuant to G. L. c. 231, § 59H.

We consider this claim with respect to attorney's fees and costs granted the trustees, the only awards challenged below. The judge who denied the plaintiffs' motion to vacate the orders granting attorney's fees and costs to the trustees concluded that very little of the attorneys' time was specifically allocable to the reinstated counts and that segregating a portion of the awarded fees to the reinstated charges would prove too difficult. The judge properly exercised her discretion in this regard.

General Laws c. 231, § 59H, directs that, once a special motion to dismiss is granted, "the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters." We read this language to mean that attorney's fees and costs are mandatory for successful special motions, and the amount of the award need not be limited to legal work incurred in bringing the special motion itself.[17] This interpretation is consistent with the Legislature's intent to enact broad protection for petitioning activities and serves as well the statute's specific goal of resolving "SLAPP" litigation "quickly with minimum cost." *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 161, quoting preamble to 1994 House Doc. No. 1520.

The plaintiffs suggest that a recent decision of the Appeals Court, *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 601 (2000), affirming a judge's decision to limit an award to those fees and costs reasonably related to the special motion to dismiss, supports their position. We do not agree. The *Donovan* case was, in

---

[17]Because attorney's fees generally are not recoverable without statutory authorization, see *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 801 (1976), the language providing for such awards merits strict attention. Accordingly, prevailing plaintiffs under G. L. c. 93A are limited to those "incurred" in connection "with said action." G. L. c. 93A, §§ 9 (4), 11. See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664 (2002); *Schultz* v. *Subaru of Am., Inc.*, 407 Mass. 1004, 1005 (1990); *Miller* v. *Risk Mgt. Found. of the Harvard Med. Insts.*, 36 Mass. App. Ct. 411, 421 (1994). Separate counts of a complaint alleging G. L. c. 93A violations, however, need not be apportioned when they arise from a single chain of events or involve a common core of facts. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 106 (1983); *Simon* v. *Solomon*, 385 Mass. 91, 112 (1982).

the words of the Appeals Court, "problematic." Over three years had passed before the special motion was filed, during which significant resources were spent on discovery by both parties. In those circumstances, as the Appeals Court noted, a judge would be "wise to discourage the strategic delays in filing that might result if all fees and costs attendant upon a late filing were automatically awarded to a successful movant." *Id.* at 602. Such determinations are best left to the judge's broad discretion. See *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 363 (1997), and cases cited. It is important to note as well that, in the *Donovan* case, the Appeals Court reached the same conclusion we do as to the scope of recovery for attorney's fees and costs when a moving party prevails under G. L. c. 231, § 59H. See *Donovan* v. *Gardner, supra* at 601 ("a plain reading of the statute entitles a prevailing moving party to an award for all reasonable attorneys' fees and costs").[18]

4. The judgments are affirmed. The defendants may apply to a single justice of this court for an award of appropriate attorney's fees and costs in connection with the appeal. See *Fabre* v. *Walton*, 436 Mass. 517, 525 (2002); *McLarnon* v. *Jokisch*, 431 Mass. 343, 350 (2002).

*So ordered.*

---

[18]To the extent that the plaintiffs challenge the awards to the other defendants, we conclude that those awards were within the judge's discretion as well.