Staffber, J.
The Defendant, Finlay Fine Jewelry Corporation has moved for reconsideration of this Court’s earlier denial of the defendant’s special motion to dismiss the plaintiffs complaint pursuant to G.L.c. 231, Section 59H. For the reasons set forth below, after reconsideration, the Defendant’s motion is allowed.

BACKGROUND

Filene’s Inc. (“Filene’s”) is a large retail department store operating in the Northshore Mall in Peabody, MA. Finlay Fine Jewelry Corporation (“Finlay”) is a jewelry retailer, physically situated within Filene’s department store at the mall. Pursuant to a licensing agreement executed by Filene’s and Finlay, Finlay had an exclusive license to sell “fine jewelry” in Filene’s Peabody store. The details of the agreement are confidential and proprietary, but in essence, Finlay provided its own merchandise and sales employees, and granted Filene’s a percentage of its sales as compensation. In order to “maintain the appearance to the consumer of a single store,” Filene’s provided overall mánagement of the whole store, including securiiy. This sale/lease arrangement was not uncommon within Filene’s. Joseph Losano (“Losano”) was the Filene’s employee responsible for the loss prevention activities in this case.
During March, Filene’s became aware of Tracy Gar-ber (“Garber”) as a possible theft suspect. She had been a Filene’s employee at the cosmetic counter the prior year. In early April, Garber was stopped by store security for shoplifting shoes. A few days earlier, on April 5, 2000, Finlay’s suffered the loss of a single pair of one carat diamond earrings, when a woman fitting Garber’s general description swapped the real diamond studs for counterfeit diamonds. When interviewing Garber regarding the shoes, Losano also began asking her about the diamonds.
Eventually, she confessed that she made a swap and stole the authentic diamond earrings. A complaint was later filed and Garber pled guilty to charges for stealing the shoes and the diamond earrings.
In the wake of these events, Finlay was focused on retrieving the diamonds, and not on pressing charges against the holder of the diamonds. During his investigation, Losano kept his Filene’s supervisor and the Finlay management contact up to date. He also interviewed people that worked at the Finlay counter within Filene’s, particularly the supervisor Heather Hawkins (“Hawkins”) who had experience with diamonds.
During the investigation, Garber confessed that she sold the Finlay diamond earrings to Tony Hashem (“Hashem”) for $1,000 on April 5, 2000. Hashem was the manager of Hannoush Jewelers, a retail store also located in the Northshore Mall. After Garber’s confession, Losano’s investigation shifted toward Hashem. Hashem admits that he purchased two pairs of diamond earrings from Garber, a one carat pair and another smaller pair. It is unclear where the second, smaller pair came from. At the time he was approached by Garber, Hashem was in the process of purchasing a similar pair of one carat earrings from his employer, for his brother-in-law. The deal with Garber was better than the store offer though, as it involved less money and two pair of earrings, not just one pair. Hashem chose to buy from Garber, and made plans to pick up a check from his brother-in-law for $1,000, then later exchange the check for the two pairs of earrings. The exchange occurred in the Hannoush store on April 5, 2000. The earrings were eventually given as a gift to Hashem’s future sister-in-law.
When Losano initially approached Hashem, in approximately the middle of April, Losano informed Hashem that the diamonds were stolen. At that point, *623 it was clear that Finlay’s wanted their diamonds back, and Hashem wanted his money back. Numerous conversations followed in an effort to negotiate an arrangement to everyone’s satisfaction. At one point, Garber was involved, providing $500 towards the repurchase. While continuing to negotiate, Losano consulted with a state police officer, with whom he was working on another matter; he was instructed to continue trying to work it out. The following day, Losano was again unsuccessful in settling the issue, when Hashem rejected an offer of $500 for the larger, one carat Finlay earrings, as Hashem wanted $700. After receiving permission from Finlay, Losano contacted the Peabody police to inform them of the situation. The focus was still on retrieving the earrings. The police visited Hashem at the Hannoush store, and advised Hashem that he could be treated either as a victim or a criminal defendant, depending upon his level of cooperation. Hashem told the police to contact his attorney. The police then conducted an investigation, interviewing all of the employees involved.
In late April, Hashem and Losano began negotiating again for the diamonds, arguably because Hashem wanted to end the police pressure he was receiving, and to avoid the significant legal costs that might ensue from a criminal charge. Hashem indicates that, at the time, his attorney told the police that if they charged Hashem, he would file suit against them. Under the direction of the Peabody police, Losano then devised a plan to give Hashem a check for $1,000, retrieve the diamonds, and then have the police retrieve the check. The funds to support the check were never actually provided, as neither Filene’s nor Finlay was interested in providing funds to essentially buy back stolen goods.
In an arranged buy orchestrated by the police, Losano ultimately purchased the two pairs of earrings back from Hashem on May 5, 2000. Numerous undercover police officers were located in the mall area of the planned exchange, and video cameras from two stores were focused on the area as well. Finlay employee Hawkins was present at the meeting in the middle of the mall, and confirmed that the larger pair of diamond earrings exchanged appeared to match in color, clarity and weight of those stolen from Finlay. Losano provided a signed check to Hashem for $1,000, with a blank payee line. Hashem immediately wrote in “cash” as the payee, then the three people departed. Police immediately approached Hashem and asked for the check back. Hashem was distressed and argued about what was occurring. He was arrested and handcuffed. He was escorted from the mall by police, through Filene’s and down the escalator, to the Filene’s loss prevention office. Hashem remained there for approximately thirty minutes until a police cruiser arrived. He was then escorted out the back door and brought to the police station where he remained for roughly two hours until his release.
While the now arrested Hashem was being brought from the mall to the Filene’s loss prevention office by police, Losano was also present. Hashem alleges that during the escort through the mall and the store, Losano and the police officers made several derogatory remarks to Hashem, within the hearing area of several other people. These statements include; “you are a crook,” “we’re going to tell everybody in the mall,” and “you think you are going to get away with this.”
Shortly thereafter, Hashem was charged with receiving stolen merchandise. Before trial, Hashem’s counsel sought to have the charges dropped. At that point, Hashem indicated he did not want anything back, inferably neither money nor jewelry, if the charges were dropped. On August 4, 2000, Hashem was acquitted for receiving stolen property following a bench trial. Significantly, the Court also ordered the one carat earrings be returned to Finlay, and refused to act on Hashem’s request to receive money back.
Hashem indicates that he suffered emotional trauma from these events, but did not seek medical help. In addition, he kept his job and continued to receive bonuses. While he states that he believes he lost customers due to this event, none are identified and store sales continued to rise.
Hashem filed suit against Filene’s and Finlay, charging negligent investigation, malicious prosecution, false imprisonment, slander, and conversion. In response, Finlay filed a Special Motion to Dismiss under G.L.c. 231, §59H, the Anti-Slapp statute, prior to any discovery. The motion was denied by this Court on October 10,2001. Essentially, the Court found that there were questions of fact sufficient to preclude dismissal under §59H based on the then existing record. The affidavits raised questions of whether or not Hashem’s claims were solely based on Finlay’s petitioning activities.
Discovery in the case has been completed, and the record now includes lengthy depositions and testimony from Hashem’s criminal trial. In addition, the Supreme Judicial Court issued two decisions regarding the constructs of the Anti-Slapp statute. Defendant Finlay, alone, filed this motion for reconsideration of its earlier Special Motion to Dismiss. Hashem again objects to this reconsideration of the Special Motion. He relies on his memorandum of law submitted with the original Special motion, and denies that the facts or the law have changed in any way that would cause this motion to be granted.

DISCUSSION

The United States and the Massachusetts constitutions protect a person’s right of petition. Office One, Inc. v. Lopez, 437 Mass. 113, 121 (2002). This right is statutorily protected in Massachusetts via the procedural mechanism of a special motion to dismiss. G.L.c. 231, §59H. This mechanism is meant to provide very broad protection from SLAPP suits, those suits *624 brought essentially as retaliation for exercising one’s rights of petitioning[1] the government. Office One, Inc., 437 Mass. at 122.
The §59H moving party, typically the defendant, must initially show that the claims filed against it are “based on its petitioning activities alone and have no substantial basis other than or in addition to its petitioning activities.” Office One, Inc., 437 Mass. at 122 (citation omitted). Motives for petitioning are irrelevant at this stage. Id. “The focus solely is on the conduct complained of, and, if the only conduct complained of is petitioning activity, there can be no other substantial basis for the claim.” Id. If the moving party is successful, the burden then shifts to the plaintiff, to satisfy a two-prong test by a preponderance of the evidence. Id. at 123. The plaintiff must show that “(1) the defendants’ petitioning activity is devoid of any reasonable factual support or any arguable basis in law, and that (2) the activity caused the plaintiffs actual harm.” Id.
The facts of this case make clear that Finlay, located within Filene’s, suffered a loss when genuine diamond earrings were swapped for imitations. From that point on, Insano, acting as an employee of Filene’s and an agent of Finlay’s,[2] pursued an investigation of the loss. Garber, who ultimately pled guilty to the crime of stealing the authentic diamond earrings, sold diamond earrings to Hashem. Although not obliged to do so, Losano first attempted to resolve this matter “unofficially,” without involving law enforcement. However, when those efforts failed, Losano rightfully contacted the Peabody Police to further the investigation. The police and the prosecutor were then responsible for pursuing the criminal investigation, to an end of their choosing. The fact that the criminal case resulted in a not guilty finding does not translate to fault on the part of Filene’s or Finlay’s; it means the prosecution did not meet its burden. Contrary to the staunch assertions of Hashem, the defendants were generally reasonable in their petitioning actions.

Negligent Investigation and Malicious Prosecution

Considering the claims individually, see Office One, Inc., 437 Mass. at 123, Hashem alleges negligent investigation based on false allegations and a failure to ask Hashem early on whether he knew the earrings were stolen. Hashem also alleges malicious prosecution based on false accusations. There is no evidence to support the contention that either of these claims were based on any conduct other than petitioning activity. The defendants had a right to investigate the loss. There was ample reason to believe that Hashem was somehow involved. They were reasonable in bringing the problem to the police. There is no evidence to support a set-up or vendetta motivating anyone’s behavior. Hashem’s not guilty criminal verdict does not convert a reasonable investigation into a negligent or fabricated one. Hashem’s contention that his claims are based on the totality of the circumstances suggestive of a set-up cannot stand. The claims must be based on specific conduct complained of. Office One, Inc., 437 Mass. at 123.
False Imprisonment
■Hashem asserts a claim of false imprisonment, arising from the alleged false accusation which resulted in his arrest. Any imprisonment here arose from the arrest. As articulated above under the claims of negligence and malicious prosecution, the arrest was based on police activity. Hashem’s restraint in the store and in the police station was dictated solely by police action and choice, and not the actions of the defendants.
Conversion
Hashem’s claim for conversion is based on the assertion that because 1) he paid money to Garber, 2) he was acquitted for receiving stolen property, and 3) the earrings were returned to Finlay, the defendants thus committed conversion. The District Court that heard the criminal case ordered the earrings returned to Finlay. There is nothing in the record to suggest that the plaintiff appealed this particular decision of the judge. It would therefore appear that the decision to have the earrings returned to the defendant was that of the judge who heard the case, not that of the defendant.
Finlay has met its burden of establishing that the defendants’ actions were based on petitioning activity only, for the claims of negligence, malicious prosecution, false imprisonment, and conversion. For these four claims, the burden now shifts to Hashem to prove the final two elements. However, Hashem cannot succeed on the first element, that the petitioning activity was devoid of factual or legal support. As discussed above, the defendants acted on reasonable and factual information, supported by criminal law for stolen property and receipt of stolen property. Because Hashem cannot satisfy the first prong, the Court need not assess the final prong of actual harm.
This Court finds no support in the law for the precept that one can retain stolen property until he is reimbursed for his expenditure. The opposite is actually the law, in that once one has reason to know an item is stolen, continued intent to deprive the owner also constitutes guilt. Commonwealth v. Garcia, 46 Mass.App.Ct. 466, 469 n.6 (1999). “(U)sing process as a threat or club to extort or coerce some collateral advantage which is not part of the proceeding, such as the surrender of property or the payment of money” is not protected by law. Bisognano v. Jain, No. 94-6879, 4 Mass. L. Rptr. 671, 1995 Mass.Super. Lexis 104, *12-13 (1996) (citing Cohen v. Hurley, 20 Mass.App.Ct. 439, 442 (1985)).
Slander
Hashem asserts his slander claim based on statements made immediately after his arrest. The record *625 before the Court, from Hashem himself, is less than consistent regarding who made statements, where they were made, and who heard them, and is based solely on Hashem’s testimony. What is consistent is the allegation that someone, either Losano or the Peabody police, referred to Hashem as a crook shortly after his arrest in the Mall, in a relatively public setting. Hashem alleges several short statements were made during the walk from the mall to the loss prevention office.
Any such statement made after the arrest would questionably constitute petitioning activity, as it is unclear how the statements would further a criminal investigation. However, “statements made to police or prosecutors prior to trial are absolutely privileged if they are made in the context of a proposed judicial proceeding.” Correllas v. Viveiros, 410 Mass. 314, 322-23 (1991). This remains the law even if the statements were “uttered with malice or in bad faith.” Id. at 319. This privilege is founded on the important public policy that “(i]t is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have remedy.” Id. at 320 (citation omitted). As in Correllas, this case involves just such statements, made after a police investigation and an arrest, clearly presenting a situation within the context of an initiation of judicial proceedings.
In addition to this witness privilege, employer’s also hold privilege to investigate stolen goods. Galvin v. New York, New Haven & Hartford Railroad, 341 Mass. 293, 296 (1960). “It is undoubtedly the law that if the defendant, having reasonable cause to believe that someone had been stealing property [], sought to discover the guilty party for its own protection, and without malice and in the belief that it was true, charged the plaintiff with theft, the words would be privileged. It is the typical case of a privileged occasion.” Id.
If the statements alleged by Hashem were made by Losano after the arrest, they would be protected under both the witness and the stolen goods privileges. Consequently, such statements are appropriately treated as protected petitioning activity. Finlay has thus met its burden, which now shifts to Hashem. However, as was established above, the defendants’ investigatory actions were not devoid of factual or legal support. They acted on reasonable and factual information supported by criminal law. Again, because Hashem cannot satisfy the first prong, the Court need not assess the final prong of actual harm. Because Hashem cannot meet his burden on the claim of slander, and Finlay has met its burden, the Special Motion to Dismiss is also granted for slander.

ORDER

Finlay’s Special Motion to Dismiss under G.L.c. 231, §59H is GRANTED for the claims of negligence, malicious prosecution, false imprisonment, slander, and conversion.
As to Filene’s, no such motion for reconsideration has been filed. However, inasmuch as there does not appear to be legal distinctions which would put Filene’s in a different position as relates to these issues, this Court hereby enters judgment for Filene’s as well on all counts.

Petitioning activities include “reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.” Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161-62 (1998) (citations omitted).

The two defendants are treated as joint tortfeasors here, as there is no way to separate the individual contributions.