Fremont-Smith, Thayer, J.
Plaintiff Perry Beckett (Beckett) brings this action against defendants Jewish Cemetery Association of Massachusetts, Inc. (JCAM) and Harold Gold (Gold), president of JCAM, seeking damages for deceit and misrepresentation (Count I) as well as breach of the duty of good faith and fair dealing (Count II). Both counts arise from Beckett’s conveyance of a parcel of land (Lot 1) to JCAM. Beckett has alleged that JCAM and Gold made misrepresentations to Beckett leading up to the proposed closing date for Lot 1A. JCAM and Gold now bring a special motion to dismiss Beckett’s claims under G.L.c. 231, §59H (Anti-SLAPP statute). Both defendants also move to dismiss Beckett’s suit pursuant to M.R.C.P. 12(b)(6). For the following reasons, defendant’s motions are DENIED.

BACKGROUND

The following facts are alleged in Beckett’s complaint.
On August 8, 2005, Beckett entered into a purchase and sales agreement (P&S) to convey Lot 1A to prospective buyers Robin and Perry Traquina (the Traquinas), who were also abutters of Lot 1A. The P&S contained a clause restricting the use of the property to residential uses (the residential restriction) and explicitly noted that it was subject to JCAM’s right of first refusal for Lot 1A. In anticipation of the sale of Lot 1A, Beckett executed another purchase and sales agreement for a home in North Wayland on August 11, 2005. This second purchase and sales agreement designated October 14, 2005 as the proposed closing date. Beckett alleges that he intentionally chose October 14, 2005, a day after the proposed closing date of Lot 1A, so that he would have the necessary funds to purchase the North Wayland property.
The Traquinas paid Beckett a deposit of $100,000 on August 12, 2005. Three days later, Beckett’s real estate attorney, Gerald Cournoyer, notified JCAM of the P&S and inquired whether JCAM intended to exercise its right of first refusal on Lot 1A. On learning of the residential restriction, Gold telephoned Beckett and demanded that he either rescind the P&S or face an immediate suit from JCAM to enforce its right of first refusal without the restriction. Gold was angered because the residential restriction in the P&S would thwart JCAM’s intended use of Lot 1A to expand its cemeteiy.
On August 18, 2005, however, JCAM delivered a notice of acceptance to Beckett offering to purchase Lot 1A under the terms of the P&S executed by Beckett and the Traquinas, including the residential restriction. Gold also assured Beckett that JCAM would accept the P&S terms, including the residential restriction, and that they were ready to move forward with the transaction. On August 25, 2005, JCAM delivered a deposit of $100,000 to Beckett. The closing with JCAM was scheduled for October 12, 2005. On August 31, 2005, Beckett allowed the mortgage financing contingency clause for the purchase of the North Wayland property to expire, believing he would have sufficient funds to close on the North Wayland property on October 14 from the JCAM closing on October 12. By allowing the mortgage financing contingency deadline to expire, Beckett became legally obligated to purchase the North Wayland property.
*521 Over the next few weeks, Beckett spoke with Gold several times about the purchase of Lot 1A. Gold never objected to the residential restrictions in these conversations. On October 11, 2005, JCAM provided a settlement statement to Beckett, informing him that it was ready, willing, and able to close on the sale. Beckett provided JCAM with a draft instrument for the Lot 1A deed which incorporated the residential restriction. However, on October 12, 2005, the day of the closing, counsel for JCAM filed a complaint and obtained, ex parte, a preliminary injunction in Land Court to block any sale of Lot 1A by Beckett to any party other than JCAM. JCAM also obtained a lis pendens on the Lot 1A, which it filed in the Registry of Deeds. This occurred hours before the proposed closing time. Shortly thereafter, Gold contacted Beckett and advised him that JCAM had no intention of closing the sale unless Beckett removed the residential restriction from the terms of the sale. Beckett refused, fearing that he would be sued by Traquina if he did so. He now alleges that, but for Gold’s and JCAM’s misrepresentations, he would not have been obligated to close on the North Wayland property on October 14, thereby becoming obligated to pay the finance charges on that property pending resolution of the Land Court case two years later, which resulted in JCAM’s purchase of Lot 1A free of the residential restriction.

Procedural Posture

On June 28, 2007 the Land Court entered final judgment in favor of JCAM in its suit against Beckett, declaring that JCAM was entitled to purchase Lot 1A from Beckett without the residential restriction for $1.3 million. As noted above, the transaction closed shortly thereafter.
The Land Court dismissed all of Beckett’s counterclaims with prejudice except his claims for misrepresentation and breach of the duty of good faith and fair dealing. These two counterclaims were dismissed “without prejudice to Beckett’s right to bring such claims in a court having subject matter jurisdiction,” i.e., the Superior Court.

DISCUSSION

Defendants’ Special Motion to Dismiss Under G.L.c. 231, §59H
Defendants bring a special motion to dismiss Beckett’s claims under G.L.c. 231, §59H, the Anti-SLAPP statute. Defendants argue that Beckett’s claims are based on defendants’ petitioning activity, specifically JCAM’s suit against Beckett in the Land Court. Beckett maintains that the Anti-SLAPP statute is not applicable because the foundation of his claims rests in the defendants’ deceitful conduct leading up to the proposed closing date, rather than JCAM’s Land Court lawsuit.
In pertinent part, the Anti-SLAPP statute states, “ [i]n any case in which a party asserts that the civil claims, counterclaims or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.” G.L.c. 231, §59H.
The statute was enacted to dispose of “nonmeritorious lawsuits designed to intimidate or silence an opposing party.” Office One, Inc. v. Lopez, 437 Mass. 113, 121 (2002). It “walks an uneasy line between protecting the right of citizens to petition government for redress of grievances and preserving the longstanding common-law right of individuals to seek redress in court for defamation and other civil wrongs.” North Am. Expositions Co. L.P. v. Corcoran, 70 Mass.App.Ct. 411, 417 (2007), quoting Kalter v. Wood, 67 Mass.App.Ct. 584, 591 (2006). “The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents’ exercise of rights of petitioning and speech and to deter common citizens from exercising their political or legal rights or to punish them for doing so.” The Cadle Co. v. Schlichtmann, 448 Mass. 242, 248-49 (2007).
In an Anti-SLAPP motion to dismiss, the moving party (here, JCAM) must first “make a threshold showing through the pleadings and affidavits that the claims against it are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 167-68 (1998) (upholding the denial of a special motion to dismiss a complaint for breach of a non-disclosure agreement by a deponent in the course of a deposition). If the moving party meets its initial burden, the burden shifts to the non-moving party to show “by a preponderance of the evidence that the moving party lacked any reasonable factual support or any arguable basis in the law for its petitioning activity.” Baker v. Parsons, 434 Mass. 543, 553-54 (2001).
Turning to the threshold inquiry, defendants must establish that Beckett’s suit is based on defendants’ petitioning activities alone. See Duracraft Corp., 427 Mass. at 167-68; Office One, Inc. v. Lopez, supra, 437 Mass. at 122. Accordingly, defendants must first establish that Beckett’s claims are based solely on JCAM’s Land Court suit.
The “right to petition” is defined broadly in G.L.c 231, §59H and includes:
[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or
*522 [5] any other statement falling within constitutional protection of the right to petition government.
G.L.c. 231, §59H.
The Supreme Judicial Court has elaborated on what constitutes petitioning activity which “may include reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations.” The Cadle Co., supra, 448 Mass. at 248 (internal quotations omitted). In this initial inquiry, “the focus solely is on the conduct complained of and, if the only conduct complained of is petitioning activity, then there can be no other ‘substantial basis’ for the claim.” Id. at 249.
The defendants argue that Beckett’s suit is based on defendants’ petitioning activity alone because, but for JCAM’s successful Land Court law suit, “Beckett would be unable to allege detrimental reliance or damage.” Def. Memorandum at 7. This argument misses the mark for two reasons.
First, at this juncture, we focus on JCAM’s conduct that forms the basis of Beckett’s suit. See id. Here, the conduct complained of is JCAM’s and Gold’s allegedly deliberate misrepresentations and deceitful conduct in pretending to be willing and prepared to accept the residential restriction in Traquina’s offer to purchase and to close on the sale, rather than JCAM’s filing of the lawsuit. Further, the Anti-SLAPP statute generally does not protect statements that are tangential to the petitioning activity. Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 605-07 (2005). Defendants’ alleged misrepresentations cannot be considered “in connection with” defendants’ petitioning activities, see id., because defendants made these alleged misrepresentations (which contradicted JCAM’s legal position in the Land Court suit that the restriction should be abrogated) prior to the filing of their lawsuit. Defendants’ alleged misrepresentations are not insulated from judicial scrutiny simply because their alleged deceitful conduct led up to the lawsuit. See Garabedian v. Westland, 59 Mass.App.Ct. 427, 433 (2003) (concluding that neighbors were not entitled to dismissal under anti-SLAPP statute when much of the complained of conduct was not based alone on the neighbor’s petitioning activity but on their harassment of the airport owner’s contractors).
The second reason that defendants’ argument fails is that it interprets plaintiffs claims too narrowly. Even without JCAM’s Land Court lawsuit, Beckett has alleged sufficient facts to show detrimental reliance, as Beckett still would have suffered damages when JCAM refused to proceed with the closing, having been forced to carry the North Wayland mortgage for a considerable period of time because of JCAM’s refusal to close.
Moreover, a denial of defendants’ motion is in accord with the policy and purpose of the Anti-SLAPP statute. The statute was “enacted to protect citizens from lawsuits designed to chill their right to petition the government for redress of grievances.” Fisher v. Lint, 69 Mass.App.Ct. 360, 363 (2007). Here, JCAM has already vindicated its rights in Land Court, which it could have done without misleading Beckett as to its intentions, and has not provided any persuasive argument as to why Beckett’s suit in this Court would have a chilling effect on JCAM’s petitioning activity or the petitioning activity of other citizens. Indeed, JCAM’s lawsuit, although successful, with its attendant preliminary injunction and lis pendens, might itself be found to have been strategically timed so as to have been filed only after Beckett had been placed in an untenable financial position. In short, the lawsuit’s timing might be viewed as being part and parcel of defendants’ alleged dishonest course of dealing with Beckett.
For all of the above reasons, the Court concludes that the defendants have not met their initial burden to establish that Beckett’s suit is solely based on petitioning activity as defined by G.L.c. 231, §59H, so that defendants’ special motion to dismiss must be denied.

Defendants’ Motions to Dismiss Under Rule 12(b)(6)

Defendants argue that Beckett’s claims must be dismissed under the doctrine of merger by deed. This principle of law is not applicable here. The doctrine states that, after a buyer accepts a deed, the parties are bound only by the covenants that are contained in the deed itself. Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 441-42 (1975). Thus, it protects a seller from being bound by conditions in the purchase and sales agreement which were superseded by the deed. Id, Beckett’s claims for misrepresentation and breach of the implied covenant of good faith and fair dealing both concern conduct that occurred long before any acceptance of the deed, and Beckett’s suit was commenced before acceptance of the deed. Accordingly, the conduct complained of was not affected by any merger by deed.
Gold also argues that Beckett’s claims must be dismissed because he is immune from liability as an officer of a nonprofit cemetery under G.L.c. 114, §1A. This argument lacks merit because, as Gold himself points out in his motion, to qualify for immunity under G.L.c. 114, §1A, an individual must act in good faith. The basis of Beckett’s claims is that Gold acted in bad faith and therefore cannot avail himself of G.L.c. 114, § 1A at this juncture.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ special motion to dismiss Counts *523 I and II of plaintiffs complaint be DENIED. It is further ORDERED that defendant Gold’s motion to dismiss and defendant JCAM’s motion to dismiss Counts I and II of plaintiffs complaint are also DENIED.